## Edgerton *vs.* The New York and Harlem Rail Road Company.

The plaintiff, having paid his fare from New York to Albany, in a passenger train on the defendants' road, after traveling a part of the distance stopped at H. over Sunday; giving up his ticket and receiving a check in exchange. On the ensuing Monday he got upon a freight train, and continued his journey in a caboose car, being a car used for transporting persons who accompany or are in charge of the train or its freight, and for the occasional transportation of passengers paying the ordinary fare. His fare was, at first, demanded and paid, but subsequently the conductor returned him the money, and allowed him to ride in the train, by virtue of his ticket. While so riding, the plaintiff was injured by means of a collision. *Held* that after receiving the plaintiff on a train upon which other persons were carried for hire, demanding fare from him, then returning it, and recognizing his ticket as evidence of a contract authorizing him to be carried, without further charge, it was too late for the defendants to say that he was wrongfully there, or was guilty of any fault in leaving the ordinary passenger train and traveling upon a freight train.

*Held, also,* that it did not lie in the mouths of the defendants to say that the caboose car was so manifestly dangerous that the plaintiff was guilty of negligence in getting into it to ride. And that there was nothing in the conduct of the plaintiff to prevent his recovering for his injuries, if they were sustained in consequence of any fault or misconduct of the defendants.

Carriers of passengers are bound to carry safely those whom they undertake to carry, as far as human care and foresight will go. Where an injury is sustained by a passenger in consequence of any thing in the construction or management of the vehicle or the machinery of transportation, the carrier is responsible, if any exercise of care or foresight would have prevented it. *Per* Emott, J.

When it is proved that a car running at a very moderate speed, upon a rail road, went off the track, and coming in contact with a stationary object,

was dashed in pieces and destroyed, it is for the rail road company, in an action by a passenger to recover damages for personal injuries, to show that they had used every means which skill and prudence could dictate to have their road in perfect order, and their cars constructed of the best materials and in the most approved manner. *Per* EMOTT, J.

Where no cause is directly or positively assigned by the evidence for such an occurrence, the inference is that it was occasioned by some defect in the vehicle or track; and whether it could have been discovered and remedied, is a question for the jury.

APPEAL from a judgment ordered at the circuit, directing that the plaintiff's complaint be dismissed. The action was brought to recover damages for personal injuries sustained by the plaintiff in consequence of a collision of cars upon the defendants' road. On the 29th of February, 1859, the plaintiff was a passenger in one of the defendants' caboose cars running on their road. As the train entered the village of Chatham Four Corners, and while the plaintiff was seated in the afterpart of the car, and near the middle of it, the rear truck of said car ran off the track, the car was twisted and broken in two, the afterpart of it smashed in pieces, and the plaintiff thereby thrown from it among the wreck of the car, receiving severe injuries. The defendants were in the habit of conveying passengers in this caboose car at regular and fixed rates of fare, the same rates as in passenger trains, and other passengers were in the car at the time of the accident. The plaintiff had paid his fare in the passenger train from New York to Albany. At the time of the accident the train was going, as the conductor stated, from five to six miles an hour; as the engineer stated, from five to eight miles an hour. The car was an old car, as Robinson, the wagon maker, testified the timbers "were not strong, and insufficient for the business." The defendants gave or offered no explanation whatever of the cause of the accident—the running off the track—and the engineer testified the cause was unknown to him. At the close of the testimony, the defendants' counsel moved that the action and complaint should be dismissed, upon the grounds that negligence on

Edgerton *v.* New York and Harlem R. R. Co.

the part of the plaintiff contributed to the injury, and that no negligence on the part of the defendants was shown.

The court granted the motion and dismissed the complaint, and the plaintiff appealed.

*G. T. Jenks*, for the appellant.

*Chas. W. Sandford*, for the defendants.

*By the Court*, EMOTT, J. This is an action for injuries received by the plaintiff while riding in a car attached to a train running upon the defendants' road. The train was a freight train, with no passenger car attached except what is called a "caboose car," which is a box car with seats but without springs. It was used for the transportation of persons who accompanied or were in charge of the train or its freight, and also, as appears by the evidence, for the occasional transportation of passengers who were willing to pay the ordinary fare and ride in such a conveyance. There were several persons on board, on this occasion, from whom the conductor received fare, and he testified that he was in the habit of carrying passengers on this train at the regular fare. The plaintiff had paid his fare from New York to Albany, and taken a ticket at the office of the company. He left New York in one of the ordinary passenger trains, in which he rode to Hillsdale. On this train he gave up his ticket and received a check from the conductor in exchange. He remained at Hillsdale on Sunday, and on Monday morning got upon this train and into this caboose car to complete his journey. There was some objection to recognizing his right to be carried without paying fare upon the ticket or check which he had received in the other train, and his fare was at first demanded and paid. Subsequently the conductor returned him the money, and allowed him to ride in the train by virtue of his ticket. There was, however, no objection made to his getting on the train or being carried in it, at all. The

only question was whether his ticket was good for that train, or whether he should be compelled to pay fare over again from Hillsdale to Chatham or to Albany. That was a question which the company no doubt might have decided by any reasonable regulation which they saw fit to make and publish upon the subject. They were not bound to issue tickets which should be good for all their trains. They might restrict their tickets in terms to one train, or one day only. But after receiving a passenger on a train upon which other persons were carried for hire, demanding fare from him, then returning it, and recognizing his ticket as evidence of a contract authorizing him to be carried without further charge, it is too late for the company to say that he was wrongfully there, or was guilty of any fault in leaving the ordinary passenger train and embarking upon this freight train. The allegation that the plaintiff was guilty of negligence in taking a seat in a freight car is at least equally inadmissible.

It is said that this was contrary to the rules of the company; but I do not perceive any evidence to that purpose, while the fact that passengers are transported by the company in this kind of conveyance, that the plaintiff was carried on board with others and fare demanded of him, and only returned because it had been already paid at the company's office, go directly to the contrary conclusion. This car was the means and the only means of transportation offered by the defendants upon this train. The plaintiff might have supposed that it would be over uncomfortable; but I am not aware of any reason why he should have believed it to be an unsafe method of travel. The defendants placed it upon their road, used it to convey persons, received compensation from those who rode in it, and from the plaintiff among others. It does not lie in their mouths to say that it was so manifestly dangerous that the plaintiff was guilty of negligence in getting into it to ride. There is nothing in the conduct of the plaintiff to prevent his recovering for his in-

juries, if these were sustained in consequence of any fault or misconduct of the defendants.

After all the evidence was in, the judge before whom the cause was tried nonsuited the plaintiff, no doubt because in his opinion such fault or misconduct was not shown. It appeared that when approaching Chatham, the car in which the plaintiff was riding, and which was the last car of the train, ran off the track, was dashed against a freight car which was standing upon the adjoining track, and broken to pieces, and the plaintiff was injured by the collision. There was some contrariety of evidence as to the rate of speed of the train at the time, but the weight of evidence undoubtedly is that it was going at very slow speed. At the place where it occurred, the track of the Hudson and Berkshire rail road crossed the defendants' road, using what is known as a frog, at the passage of the rails. Whether the car was made to leave the track by any imperfection in this frog, or what was the cause of the occurrence, is left in doubt. There must have been some cause for such a result. It is not an incident to the ordinary motion of a properly constructed car upon a properly constructed road, that it should jump off the track and be broken in pieces, either according to the laws of mechanics or the rules of a carrier's duty. At least, it was a question for the jury whether a vehicle would be overturned in such a way without some assignable cause in itself, or in the track. There was some evidence tending to show that the immediate and entire disruption and distension of the car was occasioned by the feebleness of its materials, and it was a fair inference that the plaintiff's injuries were aggravated, if not occasioned, by its breaking to pieces as it did. It will be observed that the testimony on both sides was concluded before the complaint was dismissed. The case does not therefore present precisely a question as to what the presumption should be, or where the burden of proof should fall, to establish negligence in such a case.

The question is, whether upon the whole case the jury would have been bound to find that the occurrence took place without any fault or negligence of the defendants in the construction or use of their road or their cars.

It is an elementary principle in regard to the duty and responsibility of carriers of passengers, that they are bound to carry safely those whom they undertake to carry, as far as human care and foresight will go. Where an injury is sustained by a passenger in consequence of any thing in the construction or management of the vehicle or the machinery of transportation, the carrier is responsible, if any exercise of care or foresight would have prevented it.

In the case at bar no evidence was given by the defendants, to explain the occurrence or show its occasion; nor was there any evidence of the exercise of any skill, or foresight or precaution in the preparation or examination of the vehicle or the track, except the very slight evidence of the belief of the conductor and the engine driver on the train, that they were in good order, and the fact that no accident had hitherto occurred to that car, or at that place. The responsibility of a rail road company extends to all the means employed in transportation. Not only the motive power and the vehicle, but the track upon which they run, are prepared and provided by them, and are in their exclusive control and charge. When a collision occurs, or a vehicle is overturned or destroyed, they are at least better able than any one else to explain how it took place. I do not say that a presumption necessarily arises, from the fact that the rail road company do not explain or account for such an occurrence, that they are to blame. That is not necessary, at present. But when it is proved that a car running at very moderate speed went off the track, and coming in collision with a stationary object, was dashed in pieces and destroyed, it is not an unjustifiable or an unreasonable inference that this was occasioned by some defect in the construction of the car or the road, or both.

Edgerton *v.* New York and Harlem R. R. Co.

(*See Curtis* v. *Rochester and Syracuse R. R. Co.*, 18 *N. Y. Rep.* 534, 543 ; *Holbrook* v. *Utica and Schenectady R. R. Co.*, 2 *Kern.* 236.)

It was for the defendants in the present case to show that they had used every means which skill and prudence could dictate, to see that their road was in perfect order, and their cars constructed of the best materials and in the most approved manner. Upon such evidence, it would be for the jury to say whether the overturn of the car was unavoidable by human skill, or whether if due precaution had been taken it would have occurred ; and whether if the car had been properly built it would have been destroyed as it was, and the plaintiff thus seriously injured, even if it had left the track. When no cause is directly or positively assigned by the evidence for such an occurrence as that by which the plaintiff was injured, we are not required nor allowed to presume that it was inevitable. It is a more legitimate inference that it was occasioned by some defect in the vehicle or track. Whether that defect could have been discovered and remedied, was a question for a jury. We are of opinion that this case should have been left to the jury, under proper instructions.

The nonsuit was erroneously granted, and it must be set aside and a new trial ordered, with costs to abide the event.

[ORANGE GENERAL TERM, September 9, 1860. *Lott, Emott* and *Brown,* Justices.]