## H. & T. C. R'Y Co. v. LULA B. HAMPTON.

(Case No. 5330.)

1. CONTRIBUTORY NEGLIGENCE — AGENTS.— The widow of a mail agent brought a suit for damages for the death of her husband, caused by his head coming in contact with a box car negligently left too near the main line on a switch. The testimony showed that the box car was about four hundred yards from a station; that it was customary for mail agents to put their heads out of their cars when approaching stations; that the whistle was sounded as usual for the station, but some stock being near the track it was sounded a second time, and the train "slowed up" to avoid running into them; that the agent probably could not have seen anything on the outside without opening the door. *Held*, that with these facts before it, the court did not err in charging that if the jury believed that it was necessary for the agent, in the discharge of his duty, to project his head from the car at the station, but that he put his head out before it was actually necessary, on account of the distance of the train from the passenger platform, this would not prevent the plaintiff from recovering if otherwise entitled — if they believed that the acts of defendant's servants in charge of the train were such as would reasonably induce the agent, situated as he was, to believe that he was at the usual place for projecting his head in performance of his duty.

2. LIABILITY — MAIL AGENTS.— Whatever may be the precise *status* of a mail clerk upon a railroad train, it may be fairly concluded that he is entitled to recover from the company for injuries resulting from the negligence of its employees. Authorities reviewed.

APPEAL from Grayson.   Tried below before the Hon. R. Maltbie.

Appellee and her infant son, Ben. S. Hampton, filed their petition in the district court of Grayson county against the defendant, alleging that B. S. Hampton was the husband of Lula B. Hampton, and the father of Bennie S. Hampton, and that he was killed on the 7th day of January, 1884, at Kosse, Texas, through the negligence of appellant; that prior to and at the time of his death, he was engaged as mail agent and was in charge of the mail on defendant's train; that when the train arrived at Kosse, it was necessary, for the proper discharge of his duties as such mail agent, to put his head out of the train; that in doing so, on the 7th day of January, he was struck on the head by some box cars, which had been left and were standing very near the main track, and was caught between the mail car and the box cars and killed.   Damages laid at $25,000 actual and $25,000 vindictive.

Appellant answered by general denial, and pleaded specially that Hampton, by having his head out of the door of the car, contributed to his death; that there was no necessity or justifiable excuse for his putting his head out of the car; that he was not a passenger on defendant's train, and that it had no contract with him and owed him no such duty as it did to its passengers.

Trial had October 31, 1884.   Verdict and judgment for $7,000.

*R. De Armond* and *C. N. Buckler*, for appellant.

*Wilkins & Patty*, for appellee, on contributory negligence, cited: R'y Co. *v.* Murphy, 46 Tex., 356; Frech *v.* R'y Co., 39 Md., 574; R'y Co. *v.* Garcia, 4 Tex. L. Rev., 342.

On a mail agent on a mail car being a passenger, they cited: U. S. R. S., secs. 3997 to 4005, title 46; Seybolt *v.* R'y Co., 95 N. Y., 502; R'y Co. *v.* Curran, 19 Ohio St., 1; Yeamans *v.* Contra Costa Steam Nav. Co., 44 Cal., 71; R'y Co. *v.* Stevens, 95 U. S., 655; St'r New World *v.* King, 16 How., 496; R'y Co. *v.* Derby, 14 How., 468; Jacobus *v.* R'y Co., 20 Minn., 124; Washburn *v.* R'y Co., 3 Head, 638; Wilton *v.* R'y Co., 125 Mass., 130; Wilton *v.* R'y Co., 107 Mass., 108; Blair *v.* R'y Co., 66 N. Y., 313; R'y Co. *v.* Lockwood, 17 Wall., 357.

DELANY, J. COM. APP.— The first assignment of error is that the court erred in giving the first special charge asked by the plaintiff, because there were no pleadings to warrant the charge, and because it was calculated to mislead the jury by submitting to them other issues than those made by the pleadings.

The charge was as follows:

" If you believe, from the evidence, that it was necessary for B. S. Hampton, in the discharge of his duty, to project his head from the car at Kosse station, but that he put his head out before it was actually necessary, on account of the distance of the train from the passenger platform, this would not prevent the plaintiff from recovering if otherwise entitled,— if you believe that the acts of defendant's servants in charge of the train were such as would reasonably induce the said Hampton, situated as he was, to believe that he was at the usual place for ejecting his head in performance of his duty."

Whether it was necessary for the mail agent to put his head out of the car upon approaching the various stations the witnesses were not agreed. Some of them said it was necessary; others that it was not; but almost all of them agreed that it was generally done. But in this case Hampton was killed at the north end of the switch, which is about four hundred yards north of the station. Hence appellant insists that there could be no necessity for him to look out or put his head out of the car at that place. Admitting this to be true, for the sake of the argument, the question put to the jury by the charge was, whether Hampton believed it to be necessary, and was led to believe so by the conduct of the defendant's servants. We will state some of the facts in connection with this charge.

On the night before Hampton's death, some freight cars had been left upon the switch, but so close to the main track that, some of the witnesses testify, the train could not pass without rubbing against them. They say that the marks on the passenger cars plainly showed that they had rubbed against the box cars in passing them. The conductor says that he passed the box cars without touching them, but that when he attempted to back his train he could not pass them, and had to remove them.

The engineer says that on reaching the proper place he sounded his whistle for the station. This was some distance from the switch. Not far from the switch he again sounded his whistle on seeing some stock near the track. The other witnesses do not agree with the engineer in this part of the evidence. They say that the whistle sounded for the station; the train slacked its speed, then started again. Shortly after this he saw the box cars, and "slowed up" to see whether he could pass them. Appellees maintain that this conduct misled the mail agent, and induced him to believe that they were approaching the platform. The witnesses testify that the "slowing up" after the sounding of the whistle indicates the approach to the platform. It was a very cold morning, say the witnesses, and

the frost covered everything. The car was shut, and the agent was compelled to open the door in order to see anything on the outside. One of the defendants says: "I can always look through the glass doors and see parties and trunks on the platform." But Hampton may not have been able to see through the glass doors, or rather windows, on the side of the car (for there were none in the ends) on account of the frost.

The witnesses testify that the agent is kept very busy just before reaching Kosse, because he has quite a large number of packages to prepare for distribution near that place. No one was in the car with Hampton at the time of his death; but from all the evidence, direct and circumstantial, our opinion is that the court did not err in submitting the charge complained of. T. P. R. R. Co. *v.* Garcia, 4 Law Rev., 342.

The next question of importance is whether the court erred in refusing the first special charge asked by the defendant, as follows:

"If you believe from the evidence that plaintiff's husband, Ben. S. Hampton, was, at the time he received the injuries resulting in his death, employed upon defendant's train as mail clerk in the service of the United States, then by accepting such employment he assumed all the risks ordinarily incident thereto, and defendant would not be under the same obligations to him as if he had been a passenger on its train; and if you further believe that the death of said Hampton was caused by the negligence of any of defendant's servants, engaged in operating any of its trains, defendant would not be liable therefor, and you will find for defendant."

This charge places the mail agent in the same position as an employee of the railway company; and in that event the other employees on this train would be his fellow-servants. In Pennsylvania these mail agents are placed upon the footing of employees; but this is by virtue of an act of the legislature of that state. The case of Railroad Co. *v.* Price, 96 Pa. St., 256, is directly in point.

In that case the mail agent on the train was killed by a collision, and the suit was brought by his widow. It was held that she could not recover. The court, however, rests its decision upon the statute. The court say: "The effect of the act of congress is to make his position on the car a lawful one. Being lawfully on the train, a recovery might possibly have been had for his death upon the duty to carry safely. Collett *v.* Railway Co., 16 Q. B., 984, and Nolton *v.* Western R. R. Co., 15 N. Y., 444, go to this extent. But here the act of 1868 comes in and declares that persons employed upon the road shall have only the rights of employees of the company." The

---

---

same case is published in the first volume of Am. & Eng. Railway Cases, p. 234. In a note on p. 239, the editor says: " The question in the present case was *res integra*. The authorities cited and relied on by the court below for holding the plaintiff's decedent a passenger were Collett *v.* L. & N. W. R. R. Co., 16 Q. B., 984; Nolton *v.* Western R. R. Co., 15 N. Y., 444; Yeomans *v.* Steam Nav. Co., 44 Cal., 71; Blair *v.* Erie R. R. Co., 66 N. Y., 313; Hammond *v.* N. E. R. R. Co., 6 Rich. (S. C.), 130, and Penn. R. R. Co. *v.* Henderson, 51 Pa. St., 315. These cases may be admitted to establish the fact that, in the absence of the act of assembly, the plaintiff would have been entitled to recover. They establish, however, no more. In none of them was it specifically decided that such a person as the plaintiff's decedent was a passenger as distinguished from a person ' engaged or employed on or about the roads . . . or on or about any train or car . . . thereon.' "

In the subsequent case of Seybolt *v.* R. R. Co., 95 N. Y., 562, it was held that a railroad corporation owes the same degree of care to mail agents riding in postal cars in charge of the mails as they do to other passengers.

The court, in commenting upon the case of Price, quoted above, use this language:

" The opinion in the case of R. R. Co. *v.* Price not only does not conflict with the doctrine of these cases, but cites with approval the Nolton case. The question in that case was upon the construction to be given to to the word *passenger* as used in the act of April 4, 1868, of the laws of Pennsylvania, and it was held, from the act, that the legislature intended to exclude postal agents from the class therein designated as passengers. . . ."

Whatever may be the precise *status* of a postal clerk on a railroad train, we think it may be fairly concluded that he would be entitled to recover of the company for injuries resulting from the negligence of its employees.

Our opinion is that the judgment should be affirmed.

                                        AFFIRMED.

[Opinion adopted June 19, 1885.]