The Galveston, Harrisburg & San Antonio Railway Company
v. Petra Parsley et al.

No. 138.

1. **Charge not Erroneous.**—An instruction to the jury, that if the deceased was killed by the negligence of defendant, in the manner and form as alleged, to find the actual damages sustained, is not erroneous.

2. **Negligence Presumed.**—The fact of the uncoupling of a car and a collision having been shown, negligence is presumed, and it devolves upon the railway to show that it was the result of an unavoidable accident, to be relieved from liability. Railway v. Hennessey, 75 Texas, 155.

3. **Facts Showing Negligence.**—See opinion for facts sufficient to show negligence on the part of appellant.

4. **Evidence — Limiting Liability as Passenger Carrier.** —The refusal of the court to allow appellant to prove that the train on which deceased was killed was not a passenger train, but was a special train of United States soldiers that had been transferred to appellant's road, at San Antonio, from another railway, and that appellant was transporting said train under a special contract to furnish the government the motive power and crew to operate the train, and was in nowise responsible for the condition of said cars or their appliances, it having been shown that Richard Parsley was a soldier, and being transported by the defendant under contract with the United States Government, was not error. Railway v. McGown, 65 Texas, 640.

**5. Passenger.**—See facts in opinion held sufficient to show deceased was a passenger, and if not a passenger appellant would be responsible for negligently causing his death. Railway v. Hampton, 64 Texas, 427.

**6. Bill of Exceptions—Statement of Facts.**—When there is a conflict between the bill of exceptions and the statement of facts, the latter must prevail.

APPEAL from Bexar.    Tried below before Hon. W. W. KING.

*Upson & Bergstrom*, for appellant.— 1. The charge of the court was erroneous.    Rev. Stats., art. 1317; Railway v. Underwood, 64 Texas, 468; 1 Thomp. on Trials, sec. 1027; 2 Thomp. on Trials, sec. 2314; Railway v. Tierney, 72 Texas, 312; Railway v. Robinson, 73 Texas, 277; Railway v. Blohn, 73 Texas, 637.

2. A railway company contracting to haul cars simply of the United States Government, loaded with soldiers and property of the government, does not make such company liable as a common carrier of passengers to the soldiers occupying such cars; nor does it become liable as a common carrier of passengers for the safe condition of such cars and appliances. Hutch. on Carr., sec. 75; Railway v. Dunbar, 20 Ill., 623; 2 Am. and Eng. Encycl. of Law, 738, 739; Bridge Co. v. Railway, 37 Fed. Rep., 615; Railway v. U. S., 93 U. S., 442.

*Edward Dwyer, S. M. Ellis*, and *James Raley*, for appellees.— 1. The charge of the court was correct.    Railway v. Smith, 74 Texas, 278; Railway v. Suggs, 62 Texas, 323; Railway v. Hennessey, 75 Texas, 155.

2. The court did not err in excluding the evidence offered by appellant to show that it was not liable as a carrier of passengers.    Contracts limiting the liability of carriers of passengers are contrary to public policy, and if made will not be enforced.    Railway v. McGown, 65 Texas, 642; Railway v. Horst, 93 U. S., 291; Railway v. Lockwood, 17 Wall., 357; Railway v. Henderson, 51 Pa. St., 315; Railway v. Garcia, 62 Texas, 288; Cool. on Torts, 686; Hutch. on Carr., sec. 563; Patt. Ry. Acc. Law, 216; Brewer v. Railway, 124 N. Y., 59.

FLY, ASSOCIATE JUSTICE.—This is a suit brought by Petra Parsley, as surviving wife of Richard Parsley, for herself and for the benefit of the other appellees, James R. Parsley and John B. Parsley, minor children of herself and said Richard Parsley, deceased, to recover damages in the sum of $20,000 for the killing of said Richard Parsley, on May 21, 1891.    The material allegations, after stating that appellant had agreed to carry deceased safely from San Antonio to Houston, were as follows:

" That in disregard of its said duty, the said defendant did run its train of cars so carelessly and negligently, and did provide and furnish such inferior and defective machinery and cars and couplings and air brakes, that

the car on which the said Richard Parsley was riding became uncoupled through defective coupling machinery, and the engine to which said car was originally attached having suddenly stopped, by the negligence of the engineer in charge of said engine, the car in which the said Parsley then and there was ran into the said engine, and was so jolted, smashed, and broken up that a number of boxes contained in said car were turned, and were thrown upon the said Richard Parsley, and so crushed and mangled him, the said Richard Parsley, as to cause the death of said Richard Parsley, which plaintiffs say occurred a few minutes after the collision between said engine and said car, as above set out; plaintiffs say, that at the time the said car became detached from the engine as aforesaid, that the said train was running at a high rate of speed, that the automatic air brakes attached to said train were, by the negligence and carelessness of the defendant, its servants and agents, out of order, defective, and imperfect, and would not therefore stop said train when the same became detached from the engine.

" Complainant says that the train on which the said Richard Parsley was at the time of his death was a passenger train, but that the conductor, engineer, fireman, and other officers and employes in charge of said train were incompetent, inexperienced, and unfit to run such train, for the reason that the said men in charge of said train had no experience in the management or running of a passenger train, but before taking charge of said train were and had been in the employment of the defendant in running and managing freight trains of the said defendant on its road.

" Plaintiffs further say, that the engineer in charge of the engine of the said train was so grossly careless, negligent, and incompetent, and at the time the said engine became detached from said train made no effort or attempt to avoid a collision between the said engine and the said train, but as soon as the said engine became detached from the said train the engineer and fireman in charge of said engine abandoned the same, thereby causing such collision and the death of the said Richard Parsley. That the death of the said Richard Parsley was caused and brought about without any fault or neglect of the said Richard Parsley, and that the said Richard Parsley had a right, and it was his duty, to be in the car wherein he was killed, being the car assigned him by said defendant. That the said negligence that caused Richard Parsley's death occurred near Columbus, Texas, on defendant's line of railway."

To which petition appellant answered by general demurrer and general denial, and specially pleaded as follows: ''And further specially answering, defendant says, that if the Richard Parsley mentioned in plaintiff's petition was killed at the time and place stated, his death was caused by an unavoidable and unaccountable accident, without any negligence on the part of defendant or any of its employes, and was not caused by any defect in the coupling of the cars or otherwise of the train on which said

Richard Parsley is alleged by plaintiffs to have been when receiving his fatal injuries.

"For further special answer defendant says, that it is informed and believes, and therefore charges the truth to be, that if said cars were uncoupled, and that through it said Richard Parsley was killed, such uncoupling was not through the knowledge, directions, or act of the defendant or any of its employes or servants, but was the wanton and malicious act of some person unknown to defendant and in no manner connected with, under the control, or in the service of defendant, for which defendant is in no manner responsible; wherefore defendant prays that plaintiffs take nothing by their suit, that defendant have judgment for all costs of suit, and for general and special relief."

The case was tried by a jury, and a verdict returned for $7440, upon which judgment was rendered.

*Conclusions of Fact.*— 1.  On the night of the 21st of May, 1891, Richard Parsley, who was the husband of appellee Petra Parsley, and the father of the minor appellees, James R. Parsley and John B. J. Parsley, was a passenger on a train consisting of five passenger and two baggage cars, on the road of appellant near Columbus, Texas, when the train became detached from the locomotive, and on account of the faulty coupling of the car and engine and carelessness of the engineer, an employe of appellant, and the failure of the air brakes to properly work on the train, there was a collision between the locomotive and train, in which Richard Parsley was crushed to death.

2.  That said Richard Parsley was a passenger on the train, with a number of other United States soldiers, and when killed was in the baggage car, where his duties required, and was there with the knowledge and consent of appellant, whose employes had full charge of the train, and under whose authority it was being run.

3.  That prior to the collision the train had become uncoupled from the engine at the same place where it became uncoupled at time of the collision.

4.  That Richard Parsley was in the baggage car in company with three other soldiers, as a detail made by his superior officer to take charge of the baggage and rations belonging to the troops, who were being transported by appellant in a train from San Antonio to Houston.

5.  That Richard Parsley at time of his death was receiving $22 per month as a sergeant from the government, and in other ways was making about $35 per month, and besides was furnished by the government with quarters, rations, and clothing.  That the rations were worth 40 cents a day, and the clothing $200 per annum.  He was in the habit of furnishing his wife at least $25 per month of his earnings.

6.  That if the air brakes on the train had been in proper working or-

der when the cars became uncoupled from the engine, they would in a short distance have stopped the train, and the collision would have been avoided; or if the engineer had not stopped his engine the cars would not have collided with it. That no effort was shown to have been made to use the hand brakes that were on the cars by the two brakemen, employes of appellant.

7. That there was no bell cord or rope connecting the cars with the engine, and that all regular passenger trains as a rule have bell cords.

*Conclusions of Law.* — The first assignment of error complains of the first and second paragraphs of the charge of the court, which are as follows:

" 1. If you believe from the testimony that Richard Parsley was killed through the negligence of the defendant company, its agents and employes, in the manner and form as alleged in plaintiffs' petition, then you will find for plaintiffs the actual damages sustained.

" 2. But if you believe from the evidence that the defendant company or its employes were not guilty of the negligence as alleged, or that the death of Richard Parsley was the result of an unavoidable accident, or that his death was caused by the act of some wanton person not connected with the defendant company or in its employ, then you will find for the defendant company."

This assignment is so complicated and complex, not to say unintelligible, that we might under the statute and the rules refuse to consider it. There is no error pointed out in the first clause of the charge above quoted, the only thing alleged in the assignment being, that it " permits a recovery on the part of plaintiffs on the general ground that if Richard Parsley was killed through the negligence of the defendant company, its agents and employes, in the manner and form as alleged in plaintiffs' petition." What is the error relied upon in the paragraph alluded to ?

In the case of Earle v. Thomas, 14 Texas, 593, it is said: " What shall be sufficient special assignment of error is not susceptible of precise definition. It should be such as to draw the mind to the apprehension of the particular error intended to be relied upon." We are of the opinion, however, that the charge is not erroneous, and as it made a finding for appellees dependent upon proof of all acts of negligence alleged in the petition, it erred, if at all, in favor of appellant, and made more onerous the duties of appellees in regard to the proof than perhaps was incumbent on them. There can certainly be no objection, that is available to appellant, to instructing a jury that the plaintiffs must, in order to recover, prove their case as alleged. The second paragraph is unobjectionable, and no error is pointed out in it by the assignment. It does nothing but tell the jury that if the negligence is not proved as alleged, then they must find for defendant; or if the death of Parsley was caused by an un-

avoidable accident, or if his death was caused by the act of some wanton person not connected with defendant, then the jury should find for the defendant. These were all defenses made by appellant, and we can see no reason why they should not be considered by the jury. It was proper that the jury should consider them in making up their verdict. There is nothing in this charge submitted to the jury that is not properly pleaded and in evidence.

In cases of accident on railroads, it is often impossible for an injured person to allege the particular cause of the accident. The averment in this case is, that through the use of inferior and defective machinery, cars, and couplings and air brakes, there was an uncoupling of the cars, and that a collision was thereby caused, from which resulted the death of Parsley. The fact of the uncoupling of the car and the collision having been shown, negligence on the part of the railway company is presumed, and it devolved upon it to show that it was the result of unavoidable accident. It has been held both in England and America, that when the breaking down or overturning of a coach is proved, negligence on the part of the railroad is presumed, and there are cases holding the same doctrine in regard to collisions. It is not incumbent on the plaintiff, after proving an accident which implies negligence, to go further and show what the particular negligence was, when from the circumstances it is not in his power to do so. Railway v. Brinker, 68 Texas, 502; Railway v. Smith, 74 Texas, 276; Railway v. Hennessey, 75 Texas, 155.

This rule has been laid down in many of the States, and is founded in common sense and reason. There were no special exceptions to the petition and no objection to the testimony, and neither were there any special charges requested. If the charge of the court failed to fully present the issues made by the evidence and pleading, then it was the duty of appellant to ask special charges presenting such issues more fully.

But it is contended by appellant that there was no proof of negligence. The evidence shows that before the accident the train had parted from the engine, but the air brakes being in working order stopped the train, and an accident at that time was averted. There seems to have been no precaution to prevent a recurrence of the mishap; and if the circumstances really occurred as detailed by the witnesses, there was enough to put the employes on their guard, and they should have placed some one on watch, so as to prevent any person from pulling the coupling pin. Even after the second uncoupling, there would have been no collision if the air brakes had worked properly or if the engineer had kept out of the way of the cars. There were hand brakes on the train, but there was no effort to stop the train with them. It was also proved that bell ropes are always used on passenger trains, but none was in use on this train. All the circumstances establish a case of negligence on the part of appellant, and it

devolved upon them to show that the collision was the result of unavoidable accident.

The second assignment of error is, that the court erred in refusing to allow appellant to prove that the train on which Parsley was killed was not a passenger train, but was a special train of United States soldiers, that had been transferred to appellant's road at San Antonio from another railroad, and that appellant was transporting said train under a special contract to furnish the government motive power and crew to operate the train, and was in no wise responsible for the condition of said cars or their appliances, it having been shown that Richard Parsley was a soldier, and being transported by defendant under contract with the United States Government. Counsel frankly admit that they have been unable to find any case or authority in point supporting the assignment.

The cases cited by appellant do not sustain the position assumed, and the nearest approach to sustaining it, of any authority, that has been accessible on this point, is the case of Robertson v. Railway (Massachusetts), 31 Northeastern Reporter, 650, in which it is held, that where a railroad company makes a special contract with circus proprietors to load and unload, assume all risk of accident, and save the company harmless, the relation of the company to the employes of the circus who travel on the train under such contract is not that of a common carrier, and it is not obliged to inspect the trucks of the cars, and is therefore not liable for an injury to such employe arising from a defective car truck which inspection would have revealed. The decision in that case is based on the fact that the proprietors of the circus were in complete control of the train, the railway company having furnished nothing but the motive power. We do not, however, agree with the opinion in that case; but if we did, a different case is here presented for our consideration. Even if it was not the duty of appellant to inspect the cars, it was certainly its duty to furnish an appliance that would keep the train attached to its locomotive.

No matter what the terms of the contract may have been between the United States and appellant, it could not, under our Constitution and laws, relieve itself of the consequences of the negligence of its employes. This rule is recognized in most of the American States. In Pennsylvania it is held that a common carrier can not limit his liability so as to cover his own or his servants' negligence. Railway v. Henderson, 51 Pa., 315; Railway v. Farnham, 55 Pa., 62. The same is true in Ohio and in many other States.

This question is thoroughly discussed in Railway v. Lockwood, 17 Wallace, 357, and is closely reviewed by Chief Justice Stayton in the case of Railway v. McGown, 64 Texas, 643. In the latter case it is said: " The relation of passenger and carrier is created by contract, express or implied, but it does not follow from this that the extent of liability or

responsibility of the carrier is in any respect dependent on a contract. In reference to matters indifferent to the public, parties may contract as they please; but not so in reference to matters in which the public has an interest. For the purpose of regulating such matters, rules have been established, by statute or common law, whereby certain duties have been attached to given relations and employments. These duties attach as matter of law, and without regard to the will or wish of the party engaged in the employment, or of the person who transacts business with him in the course thereof; and this is so for the public good. Duties thus imposed are not the subject of contract. They exist without it, and can not be dispensed with by it. The violation of such a duty is a tort.''

In a Michigan case quoted by Judge Stayton it is said: "This duty does not result alone from the consideration paid. It is imposed by law, even where the service is gratuitous. The confidence induced by the undertaking of any service for another is a sufficient legal consideration to create a duty in the performance of it.''

If the deceased could not have made a contract with appellant that would exempt it from liability, the United States Government could not do it for him.

It is contended by appellant, that if a contract was made with the government to transport a train of cars over its road, then the relation of passenger and carrier was not established between deceased and appellant, and it was not responsible in damages for his death. This position is not well taken. We are of the opinion that deceased was a passenger on the train; but if he was not, appellant would be responsible for negligently causing his death.

In the case of Railway v. Hampton, 64 Texas, 427, it was held, that the railroad company was responsible in damages for injuries inflicted on a mail agent, who was at the time of the injury riding in a mail car being transported under a contract with the government.

In the case of Mallory v. Railway, 39 Barbour, 488, it was held, that although the company only agreed to furnish the motive power to draw cars laden with the property of another, the latter to load and unload the cars, and to furnish the brakemen, to be under control of the company's conductor, the company was liable as a common carrier for injuries not arising from unavoidable accident or the public enemy.

In case of Railway v. Swift, 12 Wallace, 262, Judge Field says: "In all such cases the liability of the common carrier attaches when the property passes with his assent into his possession, and is not affected by the car in which it is transported or the manner in which the car is loaded.'' The above was a case in which troops were being transported under a contract with the United States Government; and it was further held, that the fact that the baggage car was guarded by soldiers did not relieve the railway company of its duties as a common carrier. It was held in

New York also, that soldiers being transported under contract with the government were passengers. Truax v. Railway, 4 Lans. (N. Y.), 198.

Richard Parsley was lawfully on the train as a passenger, and was entitled to all the care which the law requires of the passenger carrier, and none of the antecedent circumstances or accidents of his situation could affect the right of his wife and children to recover damages for his death; and independent of any contract, appellant was under obligation to transport deceased safely. Hutch. on Carr., sec. 566.

The fact that deceased was in the baggage car when killed, and that the baggage being nearest to the engine was in a more dangerous position than if he had been in the passenger coaches, can not affect appellant's liability. This was his station, and he was obeying the commands of his officers in remaining in the baggage car. He was there, too, with the knowledge and consent of the employes who were in charge of the train; and being a passenger, it was their duty to have warned him as to the danger of his position, and to have cautioned him against such imprudent conduct. Hutch. on Carr., sec. 637. Even if the duty of warning him did not rest on the appellant, he was in the baggage car with the knowledge and consent of appellant, and was there because required by his duty to be there. To all intents and purposes he occupied the same position towards appellant that a mail agent does under a contract with the government, as set forth in the Hampton case herein before cited.

In support of appellant's position on this point, we are cited to the case of Railway v. Clemmons, 55 Texas, 88; but in that case, as well as others cited by appellant, the ruling is based on the ground that the injured persons voluntarily took exposed positions, there being ample accommodations prepared for them in the passenger coaches. There was a necessity for the deceased to be where he was; in fact, in compliance with his duty as a soldier, he could not be in any other place on the train; and being where he was with the consent of appellant, he must be presumed to have been there lawfully. Edgerton v. Railway, 35 Barb., 193, 389; Hutch. on Carr., sec. 264.

The question of contributory negligence was not raised by appellant's pleading, nor in any other manner in the lower court, and it can avail itself of nothing on that ground.

The third assignment of error contends, that the trial court erred in permitting its witnesses, on cross-examination, to testify that none of the employes who were on the train on the night of the accident were discharged. This assignment is based upon a bill of exceptions that sets out that appellant excepted to the question, asked of J. T. McQueeney and J. H. Mass, "Were any of defendant's employes who had charge of and operated the train on which Richard Parsley was killed discharged from the service of the company after the accident?" To which they answered, "None of the

employes were discharged after the accident, and are still in the employ of the company.''

Neither the bill of exceptions nor the assignment are borne out by the record. McQueeney does not seem from the statement of facts to have been asked the question, and does not in any manner testify as stated in the bill of exceptions; and the other witness, who was the fireman on the wrecked train, and not charged with any negligence, in answer to the question, said, ''I don't know whether any of the employes on said train were suspended or discharged on account of this wreck; I was not suspended or discharged.'' There being a conflict between the bill of exceptions and the statement of facts, the latter must prevail. McMichael v. Trueheart, 48 Texas, 220; Wiseman v. Baylor, 69 Texas, 67; Ramsey v. Hurley, 72 Texas, 194.

The fact that the fireman was not discharged could not have influenced the minds of the jury; and if it was improper testimony, there is sufficient proper evidence to sustain the verdict.

The fourth assignment being aimed at error in refusing to grant a new trial, is disposed of in the discussion of the other assignments. The fact of the cars becoming uncoupled twice in a distance of thirteen miles, that the air brakes failed to work, and that the engineer stopped his engine at a time and place when he should not have done so, and when it was known to the employes that men were in the front car, show such negligence on the part of appellant, which is not rebutted by its testimony, as to justify the verdict. The man was sober and industrious, and was earning a good livelihood for his family; and there being no evidence of passion or prejudice operating upon the jury, we are of the opinion that the verdict is not excessive.

The judgment is affirmed.

*Affirmed.*

Delivered January 3, 1894.

Motion for rehearing overruled.

Writ of error refused March 15, 1894.