### TEXAS EMPLOYERS' INS. ASS'N v. HOEHN. (No. 2315.)

Court of Civil Appeals of Texas. El Paso. Sept. 19, 1929.

Rehearing Denied Oct. 10, 1929.

Lea, McGrady, Thomason & Edwards, of El Paso, for appellant.

Knollenberg & Cameron, of El Paso, L. C. McNabb and L. J. Holzwarth, both of Phœnix, Ariz., and H. P. Talley and John W. Penn, both of El Paso, for appellee.

HIGGINS, J. This is a suit in the district court of El Paso county by Mrs. Marie Hoehn, surviving mother of Edward Hoehn, deceased, against Employers' Casualty Company, and Texas Employers' Insurance Association, seeking to set aside a previous award of the Industrial Accident Board of Texas denying compensation to Mrs. Hoehn under the Texas Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309).

The plaintiff dismissed as to the Employers' Casualty Company, and upon trial without a jury judgment was rendered in her favor against the Texas Employers' Insurance Association, from which said association appeals.

Upon the trial it was agreed:

"Edward Hoehn, a single man, 18 years of age, was killed by an accidental fall in the State of New Mexico on or about November 8th, 1926, in course of his employment as an

employee of Joe Gerrick & Company, which company carried what is known as workmen's compensation insurance by means of a workmen's compensation policy of insurance issued by defendant, Employers' Casualty Company, for the protection of employees of Joe Gerrick & Company who might be injured in such place and manner as to entitle them to compensation under the laws of the State of New Mexico, and the said Joe Gerrick & Company further carried a policy of workmen's compensation insurance issued by defendant Texas Employers' Insurance Association for the protection of employees of Joe Gerrick & Company who might be injured at such place and time as to entitle them to workmen's compensation insurance under the laws of the State of Texas. Both of said policies of insurance were in full force and effect at the time the said Edward Hoehn received injuries resulting in his death. * * *

"The defendant Employers' Casualty Company, has tendered to plaintiff payment in full for all compensation which would be due and payable under the laws of the State of New Mexico for the death of the said Edward Hoehn, which tender the plaintiff has declined to accept."

At the time of Edward Hoehn's death, Joe Gerrick & Co. were doing some construction work for the Southern Pacific Company on a bridge across the Rio Grande river between the states of Texas and New Mexico, and it was upon that job the deceased was working when he accidentally fell from the New Mexico side of the bridge, receiving the injuries resulting in his death.

The plaintiff is the sole beneficiary of the deceased.

Judgment against the Texas Employers' Insurance Association was rendered by the trial court upon the theory that deceased was hired in Texas and therefore entitled to compensation against the Texas insurance carrier under the Texas Workmen's Compensation Act. Appellant questions the sufficiency of the evidence to show a hiring in Texas, but upon the view we have of the case it is unnecessary to consider that question.

Appellant's first and second propositions are as follows:

1. "The evidence showing that no claim for compensation was ever made against the defendant, Texas Employers Insurance Association, by the plaintiff before the Industrial Accident Board of Texas, the District Court of El Paso County was without jurisdiction, and the trial judge should have dismissed the case against the named defendant, and erred in not having done so."

2. "The pleadings and evidence showing that Edward Hoehn was killed November 8, 1926, and that no claim for compensation of any sort was filed by plaintiff with the Industrial Accident Board of Texas, until March 23, 1928, when she filed a claim dated March 16, 1928, against Employers' Casualty Company only, and such claim itself having been filed more than six months after death of Edward Hoehn, and the plaintiff not having pleaded any excuse whatever for her failure to file such claim within six months, as required by the terms of Section 4A of part 2 of the Employers Liability Act (Art. 8307 Revised Civil Statutes of Texas) and there being no evidence sufficient to establish a legal excuse for such failure, though it had been pleaded, the court erred in rendering judgment against the defendant, Texas Employers Insurance Association, for any sum whatsoever." ,

Appellee replies to these propositions as follows:

1. "When an employer is doing business in two states and carries compensation insurance in different companies in each state,— then a notice of injury and claim of compensation against one of said companies, though erroneous, coupled by actual notice of the injury is sufficient compliance with the Statutes of Texas, governing notice and claim of compensation—especially is this true when no injury arises to the insurance company who has received no actual notice of injury and claim of compensation."

2. "A. The allegations in plaintiff's petition were sufficient to admit evidence showing a legal excuse for the failure to file claim within the statutory time,—especially when there was no special exception filed against it and no objections made to the introduction of the evidence offered.

"B. Strict compliance with the statutory provisions of notice of injury and filing of claim for compensation will be waived in meritorious cases—especially when no injuries arise.

"C. Negotiations for a settlement are sufficient reasons for not filing notice and claim within statutory time."

The jurisdiction of the district court in this action is not original but appellate. In order for the court to have jurisdiction of the claim against appellant, such claim must have been first presented to and acted upon by the Industrial Accident Board. Lumbermen's, etc., v. Wilmoth (Tex. Com. App.) 12 S. W. (2d) 972; Employers, etc., v. Woods (Tex. Com. App.) 243 S. W. 1085.

And claim for compensation must have been filed with the board within six months after the death of the employee, though "for good cause the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing of the claim before the board." Article 8307, § 4a, R. S. Employees, etc., v. Francis (Tex. Civ. App.) 300 S. W. 137; Norwich, etc., v. Wilson (Tex. Civ. App.) 17 S. W. (2d) 68. See also Georgia Casualty Co. v. Ward (Tex. Civ. App.) 220 S. W. 380, modified (Tex. Civ. App.) 221, S. W. 298.

■ Under the authorities cited, the propositions of law involved in appellant's propositions are well taken.

Upon trial appellee, for jurisdictional purposes, offered in evidence documentary evidence as follows:

Claim for compensation signed by appellee addressed to Employers' Casualty Company dated March 16, 1928, filed with the board March 23, 1928.

Award of the board dated May 16, 1928, denying recovery against either the Employers' Casualty Company or appellant.

Notices to the appellant and Employers' Casualty Company of appellee's unwillingness to abide by such award.

Upon what theory the board undertook to rule in favor of appellant, when no claim for compensation against it had been filed with the board, we are not advised. In the absence of such claim, the board had no jurisdiction to rule for or against appellant.

Aside from the ruling of the board, there is nothing in the record to indicate that any claim for compensation against appellant was ever filed with the board, and appellee's first counter proposition impliedly concedes that no such claim was filed. We are therefore of the opinion appellant's first proposition should be sustained.

■ As to the second proposition, the facts stated show that no claim against either insurance carrier was presented to the board until over a year after the death of Edward Hoehn. There is nothing in the record to suggest that appellee was deterred from filing with the board claim against appellant by negotiations for settlement, as is assumed in subdivision C of appellee's second counter proposition.

Appellee testified: "As early as December 28th, 1926, I returned to the Employers' Casualty Company some checks which they had sent me under the New Mexico law for the reason that I thought I was entitled to compensation under the laws of Texas. I mailed the letter which I wrote back to them on December 28th, 1926. It was my newspaper that told me I ought to try to get compensation under the laws of Texas. I wrote them the letter how everything had been, and they told me I should take a lawyer on it, so I told everything to Mr. McNabb. That wasn't why I sent the checks back. I wasn't satisfied from the beginning. I know that he been employed in New Mexico, of course, I wasn't sure where he was killed. I always tried to get compensation from Texas. I was trying to do that prior to December 28th, 1926, right away from the beginning."

And she also said: "As to who it was, prior to December. 28th, 1926, that dissatisfied me with the amount of the checks sent me by the Employers' Casualty Company and caused me to send these checks back and told me to claim under the Texas law,—I will say, you see, I didn't want compensation from New Mexico, I wanted it under the laws of Texas. As to who it was that urged me to claim under the laws of Texas and who gave me that information,—I will say, you see, from the beginning, myself, I know he went to Texas and I tried under Texas. Afterwards I find out Mr. Cox he didn't put the claim blank. I didn't find it from the beginning. They told me right away at the accident that the Texas laws would allow more compensation than the New Mexico laws. Mr. Cahill told me that and Mr. Kimble, some drug store man. As to my being told by someone, immediately following the accident, that the maximum compensation allowed under the laws of Texas was more than the maximum compensation under the laws of New Mexico, —that was it, somehow. That was right away. In reply to your question that anyway, prior to December 28th, 1926, somebody had convinced me that I ought to take a chance under the Texas laws and send back the checks which had been tendered me under the laws of New Mexico and for that reason I sent the checks back,—I will say I don't understand you quite. Yes, on December 28th, 1926, I sent these checks back to the Employers' Casualty Company, and the reason I sent them back was because I didn't want to accept under the laws of New Mexico, you see—. As to my having received the information, prior to that time, from some source, that the greatest amount allowed under the laws of Texas was more than the greatest amount allowed under the laws of New Mexico,—I will say they told me at the State Capitol, when I told them my case, you see, and I asked them how much New Mexico have and Texas, you see. I went to the State Capitol before I returned these checks to the Employers' Casualty Company. I don't remember who I talked to in the Capitol at Phœnix. I can find out. You see I never wrote nothing down. It must have been the Attorney General of Arizona, I am not sure. Mr. Cahill went with me to the Capitol. I went into the Capitol Building in Phœnix, Arizona, and there consulted someone with reference to the law of New Mexico and Texas, and he told me what compensation they paid. He got a book and he looked at the books and he told me. He told me there in the Capitol, prior to December 28th, when I sent these checks back, what the law of Texas was and what the law of New Mexico was."

And also: "He read to me from the laws of both states, he read it was from New Mexico $1,800.00. He read it to me off the book, he read it right out of the law to me."

This testimony conclusively shows that as early as December 28, 1926, appellee was advised of her rights, if any, against the insurance carrier of Joe Gerrick & Co.'s Texas employees, and no reason whatever appears

why she should not have filed her claim against such carrier with the Industrial Accident Board within the six months' period.

For the reasons shown, appellant's first two propositions are sustained, and since there is nothing to suggest that the facts have not been fully developed, judgment will be here rendered in appellant's favor.

The Orchard Case (Tex. Civ. App.) 227 S. W. 705, and Price Case (Tex. Civ. App.) 300 S. W. 667, are cited by appellee. In both of those cases facts were shown excusing the delay in filing claim with the board. They have no present application, for no facts are here shown to excuse such delay.

Reversed, and judgment rendered dismissing the suit.

### On Rehearing.

Appellee errs in its assumption that we held this court "had no jurisdiction in this case." Had it been so held, the appeal would have been dismissed.

██ This is a case where the trial court assumed jurisdiction and rendered judgment upon the merits in favor of the plaintiff when the facts necessary to confer jurisdiction upon that court were not shown.

This being the case, this court had and assumed appellate jurisdiction for the purpose of reversing the judgment erroneously rendered below, and since it was apparent the jurisdictional defect could not be remedied, judgment was here rendered dismissing the suit.

That this court had the appellate jurisdiction indicated and rendered the proper judgment upon the facts shown is well settled. Ware v. Clark, 58 Tex. Civ. App. 356, 125 S. W. 618; Hearn v. Cutberth, 10 Tex. 216; Roeser v. Bellmer, 7 Tex. 1; Timmins v. Bonner, 58 Tex. 554; Ry. Co. v. Canyon Coal Co., 102 Tex. 478, 119 S. W. 294; Turnbow v. Bryant Co., 107 Tex. 563, 181 S. W. 686; Perry v. Greer, 110 Tex. 549, 221 S. W. 931; Tinsley v. Smith (Tex. Civ. App.) 25 S. W. 64; Rice v. Rice, 24 Tex. Civ. App. 506, 59 S. W. 941.

Aside from the erroneous conception of the effect of this court's opinion and ruling, the motion for rehearing presents nothing new.

The motion is therefore overruled.