ELIZABETH SALMON, EXECUTRIX, v. W. W. DOWNS.

(Case No. 325.)

1. EQUITY.— When a vendor of land takes notes for the purchase money, and holds a vendor's lien as security, and afterwards indorses and assigns one of the notes and retains the others, and the land is sold to pay the purchase money, the indorser and assignor is entitled to share in the proceeds of the sale equally with the holder of the note assigned, whether they be sufficient to fully satisfy the note assigned or not unless it clearly appear it was the intention that the assignee should be first paid.

APPEAL from McLennan.    Tried below before the Hon.
A. S. Broaddus.

The agreed statement of facts is as follows:

John McLennan sold a tract of land, situated in Mc-
Lennan county, Texas, to Thos. J. Harris, on the 25th
day of June, 1859.    He took three promissory notes for
the purchase money, each note for the sum of $2,300,
payable respectively on January 1, 1860, January 1, 1861,
and January 1, 1862, each bearing ten per cent. interest.
A vendor's lien on the land was retained to secure the
payment of the purchase money.

The first note was paid to McLennan at maturity.    The
third note was assigned by indorsement of McLennan to
J. L. L. McCall, on December 29, 1859, and afterwards
indorsed by McCall to Joseph Salmon.    The second note,
after the assignment of the third note to McCall, was
assigned by McLennan to W. W. Downs & Son, as col-
lateral security for certain debts which McLennan owed
to Downs & Son.    By the death of the son, W. W.
Downs became entitled to collect the note so assigned.

Harris, the purchaser of the land, died, leaving the
second and third notes unpaid.    Joseph Salmon also died,
leaving a will, and Elizabeth Salmon, as his executrix,
succeeded to her husband's rights.

Downs claimed the right with Salmon to have the land
sold, the lien enforced, and the proceeds appropriated *pro
rata* to the payment of the two notes.    Salmon denied
the right, and insisted that her note, being first assigned,
carried with it the lien on the land *pro tanto*, and the
note which she held should first be paid in full, and the
remainder, if any, appropriated to the note held by
Downs.

The controversy having thus arisen before there was
any attempt made to enforce the lien by either party, it
was agreed in writing between the parties that the proper
proceedings should be commenced to close the lien; that

at the sale one of the parties should become the purchaser in trust, the land to be held to abide a judicial settlement of their respective rights. The land was sold by the administrator of the estate of Harris, and was bid in by W. W. Downs, and a deed was made to him under the agreement.

Subsequently there was an offer of sale of the land, and the parties agreed that it should again be sold, a deed made by Downs to the purchaser, and the proceeds placed in the hands of F. H. Sleeper, to be held by him in trust, to be paid to the parties as each might be entitled to it under the order of the court. The amount in Sleeper's hands would exceed but little the principal and interest due on the Salmon note.

The jury found that Downs was holding his note only as collateral security, and found a verdict in favor of McLennan against W. W. Downs for the difference between the amount which McLennan owed Downs and one-half of the money in Sleeper's hands, to wit: $804.02. They found in favor of Mrs. Salmon one-half the money in Sleeper's hands, and in favor of Downs for the other half. Salmon gave notice of appeal, and on this state of facts the case is before the court.

*Jones & Kendall*, for appellant. — On an examination of many of the cases holding that the fund is to be distributed *pro rata* to the holders of each note, without regard to the time of assignment, it will be seen that the decisions are made to depend on the question whether or not the lien passed with the note; or was it necessary for a formal assignment of the lien to be made in order to carry it with the note. It was on this that the Pennsylvania case was made to hinge, and its fallacy was clearly exposed in the dissenting opinion of the learned chief justice. He placed it upon the only equitable ground upon which it can stand,—that the mortgagee having

received a consideration for the note assigned by him, the mortgage being an incident of the debt and accessory to it, an assignment of a part of the debt was an assignment of the mortgage, not *pro rata* but *pro tanto*. The right to close the lien is a purely equitable one, and no one can ask the aid of a court of equity unless he offers to do full justice to all persons in any way related to the matter concerning which he seeks relief. To allow a mortgagee who has two notes secured by a mortgage, insufficient to satisfy both, to transfer one, become the indorser on it, get full consideration therefor, and then share equally with his transferee in the security, would be, in the highest degree, inequitable and unjust. He should not be allowed to do anything which would prevent his assignee from realizing as much on the transferred note as the assignor has received.

*Flint & Graham,* for appellee.— We claim, and insist, that the lien of all the notes is equal, and that the fund in such cases should be divided equally among all of the notes. It has been so held in Vermont, Pennsylvania, Mississippi, Michigan, New York, Ohio, Maine, Missouri, California, Louisiana, and in the early cases in Alabama — ten states. Balding *v.* Manley, 21 Vt., 550; Donly *v.* Hays, 17 Serg. & R., 400; Henderson *v.* Herrod, 10 Sm. & M., 633; McVey *v.* Bloodgood, 9 Porter, 547; Roberts *v.* Holstead, 9 Barr, 35; Mohler's Appeal, 5 Barr, 418; Cooper *v.* Ullman, Walker's Ch., 251; Pattison *v.* Hull, 9 Corw., 751; Swortz *v.* Leist, 13 Ohio St., 419; Johnson *v.* Candage, 31 Me., 28; Philan *v.* Olney, 6 Cal., 478; Laberse *v.* Chaunie, 2 Mo., 179; Herman & Co. *v.* Pfister, 2 La., 455; 1 Hilliard on Mortgages, 171–176.

QUINAN, J. COM. APP.— The question presented in this case is whether, when a vendor of land takes notes for the purchase money, and holds a vendor's lien as secur-

ity, and afterward indorses and assigns one of the notes and retains the others, and the land is sold to pay the purchase money, has such indorser and assignor a right to share in the proceeds of sale before the note assigned by him is fully paid and satisfied?

Whatever uncertainty may have attended the solution of this question hitherto, it is believed that the matter is now settled by the decisions of our court, and that with us the rule is, that where several notes are given for the same land, having a lien upon it for their payment, and are assigned to different parties, all have equal rights to have satisfaction out of the land, and this without reference to the order in which they may have been assigned or which first matured. Delespine v. Campbell, 52 Tex., 12; Paris Exchange Bank v. Beard, 49 Tex., 363; Robertson v. Guerin, 50 Tex., 317; McDonough v. Cross, 40 Tex., 251; Delespine v. Campbell, 45 Tex., 628.

Nor do we think the case is different when the vendor himself may retain one of the notes. There is no presumption arising from the transfer of one or more of them that he intends to waive his right to share *pro rata* in the common fund for that which he has retained. Of course he may waive his privilege, but that he has done so shall be made to appear by the proof.

In White, Smith & Baldwin v. Downs, 40 Tex., 233, it is intimated by Mr. Justice Gray that the assignee might have a preference over the assignor holding the retained note; but in that case the facts appear to be that such was the intention of the parties. And no doubt when this can be fairly inferred from the acts of the parties or the nature of the transaction, the assignee would be entitled to such preference. But where there is nothing to indicate that such a result was contemplated by the parties, and as the several notes have equal liens and are entitled to satisfaction out of the same fund, it is not perceived why, by force of the transfer of some of them,

the lien of the others not transferred is postponed, or that the transfer carries with it a new right to priority of payment which it did not possess before.

We are of opinion that the judgment of the court below is correct and ought to be affirmed.

AFFIRMED.

[Opinion delivered May 16, 1881.]