### ARMSTRONG v. PARR.

(Court of Civil Appeals of Texas. Amarillo. Dec. 20, 1913. On Motion for Rehearing, Jan. 17, 1914.)

1. VENDOR AND PURCHASER (§ 261*)—VENDOR'S LIEN NOTES—PRIORITIES.

When several vendor's lien notes given for the same land are assigned to different parties, all have equal rights to have satisfaction out of the land or the proceeds on foreclosure, without reference to the order of assignment or maturity.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 674–686, 688–695; Dec. Dig. § 261.*]

2. VENDOR AND PURCHASER (§ 281*)—VENDOR'S LIEN NOTES—FORECLOSURE.

In a suit to foreclose vendor's lien notes, where plaintiff claimed priority, notwithstanding an agreement whereby plaintiff's assignor, to whom the note was originally assigned, was to have only a junior lien, evidence *held* insufficient to establish a new agreement abrogating the original agreement.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 792–794; Dec. Dig. § 281.*]

3. VENDOR AND PURCHASER (§ 261*)—VENDOR'S LIEN NOTES—AGREEMENT.

Where the assignee of a vendor's lien note agreed that it should be subject to other notes retained by the vendor, the fact that the assignee subsequently exchanged his note for another on the same land did not change the respective rights of the parties under the agreement.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 674–686, 688–695; Dec. Dig. § 261.*]

4. VENDOR AND PURCHASER (§ 261*)—VENDOR'S LIEN NOTES—ASSIGNMENT.

Where the assignee of a vendor's lien notes accepted them under an agreement that they should be subject to other notes retained by the vendor, that agreement is binding, no rights of any innocent purchaser intervening, even though they were merely indorsed in blank.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 674–686, 688–695; Dec. Dig. § 261.*]

5. VENDOR AND PURCHASER (§ 261*)—VENDOR'S LIEN NOTES—CONTRACTS FOR PREFERENCE.

A vendor who receives vendor's lien notes and desires to assign some of them may contract that notes which he retains shall have a preference over those assigned.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 674–686, 688–695; Dec. Dig. § 261.*]

Appeal from District Court, Dallam County; D. B. Hill, Judge.

Action by R. C. Balaam against Ernest C. Reed and others, in which George T. Parr was substituted as plaintiff, and Florence Armstrong intervened. From the judgment, intervener appeals. Reversed, reformed, and affirmed.

Tatum & Tatum, of Dalhart, for appellant. Moore, Harrington & Powell, of Dalhart, for appellee.

HUFF, C. J. R. C. Balaam originally brought suit on note No. 2 for the sum of $517.08, against Ernest C. Reed, Caroline Spies, and C. E. Williams, and to foreclose a vendor's lien on a certain 160 acres of land. After instituting suit Balaam sold the note to appellee, Geo. T. Parr, who made himself party plaintiff in the suit and prosecuted the same to judgment. The appellant, Florence Armstrong, intervened therein, setting up that she was the owner of note No. 3, for the sum of $517.09, alleging that her note was entitled to priority of payment out of the proceeds from the sale of the land upon foreclosure. The case was tried without the aid of a jury, and the court rendered judgment for both appellant and appellee for the full amount of their respective notes and that the proceeds from the sale of the land under the foreclosure

be applied equally in discharging the judgment obtained upon the notes sued on. From this judgment, Florence Armstrong appeals.

April 15, 1908, one Jos. Frazier sold the land in question to Ernest C. Reed, who executed three notes, numbered 1, 2, and 3. The first two being for the sum of $517.08 each, and No. 3 for $517.09, and retaining a vendor's lien to secure the notes. The notes were payable in one, two, and three years, respectively, Note No. 1 has been paid off and discharged. Frazier prior thereto had listed the land in question, together with other lands, with the Wheatland Investment Company, a copartnership composed of Geo. T. Parr, R. C. Balaam, G. W. and S. J. Nutting. By some sort of arrangement or agreement, the Wheatland Investment Company procured the Reed-Allen Realty Company, of which Ernest C. Reed was a member, to handle and sell the land. E. C. Reed bought the land from Frazier, who deeded the land to Reed and took the notes in question, retaining the vendor's lien. At the time of this transaction, Reed and Frazier entered into a contract with reference to the notes in controversy, together with a number of other notes, amounting in all to $40,725.72, by which Frazier was to have an interest in the notes amounting to the sum of $26,355.65, and E. C. Reed was to have a like interest of $14,370.07. By the terms of the agreement, the notes were to be placed in the First National Bank of Dalhart for a period of 30 days, for the purpose of allowing Reed to sell the same at such price or on such terms as Frazier and Reed should agree upon. If Reed failed to sell the notes they were to be divided at Frazier's direction between himself and Reed, and the notes taken by Reed were to be indorsed "junior notes" by Frazier to the ones which should be retained by him, in respect to the participation in the proceeds from a foreclosure. This agreement is in writing and dated April 17, 1908. The notes were not sold in 30 days and it appears the time was extended. Reed-Allen Realty Company was indebted to the Wheatland Investment Company and deposited the notes with said company to secure such indebtedness. It appears the Wheatland Company afterwards became the owner of the notes so deposited.

On the 27th day of May, 1908, the Wheatland Investment Company, by R. C. Balaam, executed a receipt to Frazier for certain notes given to Frazier by E. C. Reed, amounting to the sum of $14,399.11. The receipt reciting that, should E. C. Reed succeed in selling these notes, together with those still held by Frazier, retaining vendor's liens on the same land, then Frazier would indorse said notes as primary notes, without recourse on him; but, should Reed fail to make such sale as above set out, then Frazier will indorse said notes as junior notes as provided for and set out in the agreement of April 17, 1908, a copy of which was at-

tached to the receipt. Attached to this receipt is a list of notes, totalling the amount named in the receipt. This list included the two notes involved in this suit. On July 31, 1909, an instrument was executed which recites: "For mutual convenience, we, the undersigned, have this day made the exchange of vendor's lien notes as set out below. The following notes, held by the Wheatland Investment Company as security for settlement of account with the Reed-Allen Realty Company, are delivered to Jos. Frazier." Among the list of notes set out is No. 3, on which Florence Armstrong sues. "In exchange for the above, the following notes held by Jos. Frazier are delivered to the Wheatland Investment Company." Then follows the list of notes not necessary to mention. "All the above notes dated April, 15, 1908, and signed Ernest C. Reed." This instrument is signed by the Wheatland Investment Company, Jos. Frazier, and Reed-Allen Realty Company.

R. C. Balaam, who originally brought the suit on the note and signed the receipt for his copartners, testified the Wheatland Investment Company had the local agency for selling the land, in all something over 4,800 acres, for Jos. Frazier. The Reed-Allen Realty Company was selling this land to the syndicate at a price in advance of that asked by Frazier for the land and did not desire the syndicate to know what the advance was. For this reason and the further reason that Reed-Allen Realty Company was to resell the land for the syndicate, E. C. Reed took title and executed the notes to Frazier. Frazier entered into a contract with the Wheatland Investment Company to return all said notes above his asking price to the company or their assigns for services rendered in disposing of the land for him. This made about $16,500 worth of notes, as I remember, the property of the Wheatland Investment Company or its assigns, from the time this commission contract was signed. Of course the assigns of the Wheatland Investment Company were Reed-Allen Realty Company. Frazier held the notes until in May, 1908, awaiting the outcome of the efforts of Reed-Allen Realty Company to sell both his and Frazier's part of the notes and those representing the commission of the Wheatland Investment Company and the Reed-Allen Realty Company. When Frazier turned the notes over to the Wheatland Investment Company with the understanding that had existed all along, that is, Reed-Allen Realty Company should sell all of said notes, both Frazier's and their own, Frazier would indorse said notes —all of them—as first, without recourse; otherwise the notes of the Wheatland Investment Company and the Reed-Allen Realty Company would be junior notes. This witness nowhere testifies to any change in the agreement or understanding as originally made between Reed and Frazier and recognized in the receipt given by his company.

Sam J. Nutting, another one of the partners in the Wheatland Investment Company, testified that he thought the notes were indorsed in blank by Frazier when they were first placed in the bank, and that they were so indorsed when his company received them. If there was any other agreement made between Reed and Frazier than that stated in the receipt executed by his company, he did not know of them. While he. at times by his testimony appears to leave it in doubt when the notes were indorsed by Frazier, he does state that they were so indorsed when his company received them, and that it was his impression they were so indorsed while they were in the bank. "The only understanding that I know about in regard to the notes held by the Wheatland Investment Company of the series of which Frazier held a portion in respect to participating in the proceeds in the event of a foreclosure is that the notes were to be indorsed as junior notes. They were not indorsed as junior notes. Up to the time of the division, without any other contract, they were considered by us, the Wheatland Investment Company, as being junior notes to the ones held by Frazier. After the division, I do not know that I ever thought about considering them one way or another." The division referred to by this witness was the one made between the partners after the copartnership had gone out of business or dissolved. The evidence further shows Frazier was dead at the time of the trial. The evidence does not disclose when he died. All of the notes signed by Reed were made payable to Jos. Frazier or his order, and were indorsed in blank "Jos. Frazier." Neither of the notes are indorsed as stipulated in the contract in case no sale was made by Reed. Sam J. Nutting says there was an exchange made between his company and Frazier of some of the notes originally received by his company for other notes held by Frazier, and that they traded and treated the notes so exchanged on a parity or an equality. The contract between Reed and Frazier stipulates that the Reed-Allen Realty Company should have a portion of the notes to be turned over to it out of the first and second series of notes giving the amount of the note out of each series, and the balance of the notes to be taken from the third series. The Wheatland Investment Company dissolved and wound up their affairs, and, in the distribution of the assets, the note sued on by appellee was turned over to R. C. Balaam, one of the partners of the concern, as a part of his profits. Balaam originally instituted the suit on this note, and, after the suit was instituted, transferred the same to appellee Parr. The members of the copartnership each knew of the agreement between Frazier and Reed when they came into possession of the notes in suit, together with the other notes.

There is no question presented in this case by the record that the appellee or the copartnership, Wheatland Investment Company, were purchasers without notice of the contract between Reed and Frazier; that the note in question and all the notes taken over by the partnership should be held as junior notes, and the notes retained by Frazier should be entitled to priority in payment out of the proceeds upon foreclosure of the lien. The copartnership and the individual members thereof had notice of such contract when they took over the notes.

[1-5] The apparent theory upon which the judgment was rendered is that there was no indorsement on the notes that they were to be held junior in point of payment out of the proceeds, and that they were simply indorsed in blank by Jos. Frazier. The rule is established in this state, unless changed by agreement, where several notes are given for the same land, reserving a lien for their payment, and are assigned to different parties, all have equal rights to have satisfaction out of the land or proceeds upon foreclosure and this, without reference to the order in which they may have been assigned, or which first matured. Salmon v. Downs, 55 Tex. 247; Lewis v. Ross, 65 S. W. 505; Martin v. Gray, 159 S. W. 118. This was evidently the rule the trial court adopted in rendering the judgment. He must, in order to have reached the conclusion he did, have concluded the parties entered into a new and distinct agreement upon a new consideration. We have reached the conclusion there is no evidence in the record warranting that conclusion. The fact that the notes were indorsed by Frazier in blank is explained by such indorsement having been on them when they were placed in the bank under the agreement allowing Reed 30 days in which to sell all notes, both Reed's and Frazier's, and by the further fact that, when the Wheatland Investment Company took over the Reed notes, they were so indorsed, and by the stipulation of the receipt it was recognized that Reed had the right to sell the notes, and, as stated by Balaam, "with the understanding that had existed all along that, if Reed-Allen Realty Company should sell all of said notes, both Frazier's and their own, Frazier would indorse said notes, all of them, as first, without recourse; otherwise the notes of the Wheatland Investment Company and the Reed-Allen Realty Company would be junior notes." It would appear that the purpose of leaving the blank indorsement on the notes was to await the effort to sell the notes by Reed, as agreed upon. If that was done, then they should be junior notes. The failure to place the indorsement on the notes that they were junior notes appears to have been a matter of neglect rather than an agreement not to do so upon a new consideration. It is suggested that intervener's note No. 3 was first

delivered with the receipt and afterwards returned to Frazier in exchange for the note, and, in making such exchange of notes, they were dealt with as equals or on a parity. This did not change the agreement or make a new one. The notes so exchanged took the position of the notes under the terms of the contract occupied by the notes received in exchange. In other words, No. 3, from the position of a postponed lien note, became a preferred or prior lien note. There is not the hint of a consideration for a new contract in the record. If there was an agreement, there was no consideration given to support it. The relation of the parties was not changed in the least. We therefore think there is no evidence upon which to base a finding of a new contract. The Wheatland Investment Company clearly accepted the notes as second lien notes, and understood they were such when they took them, and, as no third party or innocent holder is setting up any rights under the blank indorsement, we see no good reason why the agreement should not be carried out as made by all the parties and as understood by them. We think it is established by nearly all the courts, if not all, that a mortgage or a lien holder may legally agree with the assignee of a part that he shall have a preferred lien on the security over the assignees of the other notes, and such stipulation will be binding between the parties and all persons having notice. It is a matter of contract, lawful in itself, contravening no principle of law or public policy. Lewis v. Ross, 65 S. W. 505; Id., 95 Tex. 358, 67 S. W. 405; Anderson v. Perry, 98 Tex. 493, 85 S. W. 1138; Walcott v. Carpenter, 132 S. W. 981; Whitehead v. Fisher, 64 Tex. 638; Jones on Mortgages (6th Ed.) § 1702; Grattan v. Wiggins, 23 Cal. 31; Walker v. Dement, 42 Ill. 272.

We see no objection to a contract, as in this case, stipulating as to the notes retained by the mortgagee that the notes so retained by him should be a prior lien to the notes transferred to the assignee. If they could agree that the assignee's notes should be prior, we think they could also agree the assignor's note should be prior. The reason for making the agreement in this case is manifest. The notes taken over by the Wheatland Investment Company did not represent, in the true sense of the term, the contract price of the land, but represented the compensation to these two real estate companies in making a sale of the land to a certain syndicate. The owner of the land, in order to get his stipulated price, made the agreement that his note should be a first lien. The evidence does not disclose that a sale was, in fact, effected by the Reed-Allen Realty Company to the proposed syndicate. The sale was made only to a member of that concern, and the notes so agreed to be a junior lien were a compensation for his company's services in selling to himself.

We believe the court was in error in decreeing by the judgment that the proceeds derived from foreclosure should be prorated between appellant and appellee. The judgment will here be reformed, directing that after paying the costs of sale the amount recovered by appellant, Florence Armstrong, be first paid out of the proceeds, and, if there is any remaining after paying off her judgment, that the residue, or so much thereof as shall be necessary be applied to the judgment of appellee, Geo. T. Parr. The judgment of the trial court is here reformed, and as reformed affirmed, and the costs of appeal taxed against the appellee.

## On Motion for Rehearing.

It is urged in the motion that this court decided the case upon controverted facts. In this statement appellee is in error. The case was disposed of on what we considered the uncontroverted facts. In addition to our former statement, we think 'the written agreement evidenced the facts that all the vendor's lien notes were in the bank, subject to Frazier's control, and that the notes which Reed was to receive were not delivered until they were delivered to the Wheatland Investment Company. That company at that time executed its receipt to Frazier for the notes, reciting that the Reed portion thereof were junior lien notes and should remain so, if Reed failed to sell all the notes—both his (Reed's) and Frazier's. The contract and receipt were interpreted at that time by the parties as making the Reed notes junior lien notes, and both Balaam and Nutting testified such was the understanding of the parties. There is no controversy on the question in the record that we are able to find. The appellee, in his motion for rehearing, criticizes the opinion for a verbal inaccuracy. The word "not" is omitted in the following: "If that was done, then they should be junior notes." It should read: "If that was not done, then they should be junior notes." That is, if Reed did not sell the notes, both his and Frazier's, then the notes held by Reed should be junior. That was the agreement and understanding. Balaam says so and so does Nutting.

In presenting the case originally, appellee attached importance to the blank indorsement on the notes. As it then appeared to us, and as we understood, appellee urged that the indorsement evidenced a waiver of the agreement, or a new contract. The uncontroverted evidence is that, when the Wheatland Investment Company executed its receipt to Frazier for the notes, the blank indorsement was then on them. The evidence further showed such indorsement was on the notes while they and the contract were in the bank. This evidence we thought

then, and now believe, conclusively rebutted any presumption that the indorsement in blank was a waiver of the contract or evidence of a new contract after the Wheatland Investment Company got possession of them. As between the parties, the contract, receipt, and the admitted understanding fixed the dignity of the lien in Reed's share of the notes. At most, the indorsement was but a presumption, and being on the notes when appellee's copartnership accepted them under an express agreement that the Reed lien was a junior one, such indorsement was of no probative force. The expression used in the opinion, "That the sale was made only to a member of that concern" perhaps was sufficient to lead counsel for appellee to infer a finding by us that E. C. Reed was a member of the "syndicate." We did not intend so to find, but, on the contrary, did find and state in our finding that Reed was a member of the Reed-Allen Realty Company. The notes he executed to Frazier and which were to be junior lien notes represented the commission due the Reed-Allen Realty Company for services performed by Reed on his firm's account in selling to himself. We see no reason for changing our views on this case, and the motion is therefore overruled.