## TIMMONS, ET UX v. BONNER, ET AL.

### SUPREME COURT, GALVESTON TERM, 1883.

*Guardianship—Jurisdiction.*—Upon the marriage of the female ward the guardianship over her person and estate ceases as fully as though the guardian upon final settlement had been discharged, removed for cause or had died, and after the termination of an administration, however it may occur, the probate court has no power to render a decree against one who formerly held the fiduciary relation of administration or executor, and the relation of a guardian in no way differs from an administrator or executor in reference to the jurisdictional question involved.

*Same.*—After the marriage of the ward the relation between her and the guardian, in reference to the estate formerly in his hands, was that of debtor and creditor, and to enforce any right which she might have against him or his sureties where the sum claimed is in excess of $1,000, suit should have been brought against the principal and sureties upon the bond, in the district court for the proper county.

*Practice.*—If the court *a quo* had no jurisdiction of a case, the appellate court can have none, and the practice has been in such cases to reverse the judgment, if one other than a dismissal has been rendered, and to dismiss the case.

Error from from Cherokee county. Opinion by Stayton, J.

Timmons and wife, having by an action, which originated in the probate court for Cherokee county, which ultimated in a judgment in this court, established a liability of $1762.34 against L. H. Reed as the former guardian of the estate of Mrs. Timmons, for assetts of her estate which came into the hands of Reed as her guardian, this suit was instituted in the probate court for Cherokee county against Bonner and Long, as sureties upon the guardian's bond made by Reed.

Over the objections of the defendants, Bonner and Long,

a trial was had, which resulted in a judgment against them for the sum found to be due by the guardian, and for the costs of the suit against the guardian Reed. An appeal was prosecuted from that judgement to the district court, when a judgment was rendered against the sureties for $747, with interest thereon, and for costs of the probate court. From that judgment Timmons and wife prosecute a writ of error. Both parties assign errors.

In the probate court the defendants sought to have the cause transferred to the civil docket of the county court for trial, upon the ground that it was not a probate proceeding. This, the probate court refused to do. In the district court the same motion was made, and the court made an order thereon as follows : "Then came on to be heard the motion of the defendants, filed herein, to transfer this cause from the probate to the civil docket, and to proceed with said cause as a civil suit, and not as a probate proceeding, which motion, having been heard and considered by this court, it is the opinion of the court that the law upon said motion is with the plaintiffs, and it is considered and adjudged by the court that said motion be and the same is overruled."

The cross assignments of error present the question as to whether or not the probate court had jurisdiction of this action upon the guardian's bond ; and lying as it does at the very foundation of this action, its decision becomes necessary.

It is claimed that Articles 2695 and 2696, R. S., confer power upon the probate court to hear and determine actions upon guardian's bonds.

These articles provide that, "when a guardian who has been ordered by the court upon final settlement, to deliver the estate to the ward, or other person legally authorized to receive the same, or to pay any amount adjudged by the court, to be due by him to the estate of his ward, and fails to obey such order, upon complaint in writing by the ward, or other person legally entitled to receive such estate or money, the sureties upon the bond of such guardian shall be cited to appear at a regular term of the court, and show cause why judgment should not be rendered against them for the value of such estate, or for such money, to-

gether with 10 per cent damages on the same, and interest and costs."

"Upon hearing the complaint provided for in the preceding article, if no good cause to the contrary be shown, the court shall render and enter judgment in favor of such complainant against the guardian and sureties upon his bond that have been cited, for the full value of the estate which said guardian has failed to deliver, and for the full amount of money which the guardian was adjudged to be indebted to the estate, and for 10 per cent damages on the same, together with interest, and all costs of the proceeding, and execution shall issue to enforce such judgment. It shall not be necessary before rendering judgment against the gaurdian, under this article, that he shall have been cited."

These articles are broad enough in their terms to give to the probate court the power claimed for it by the appellants, and it becomes necessary to enquire whether, if such be the intent of the legislature as evidenced by these articles, the same be not in conflict with the provisions of the constitution by which judicial power is conferred upon the respective courts.

The 16th section of article 5 of the constitution confers upon the county courts original jurisdiction of three separate and distinct kinds :

1. They shall have exclusive original jurisdiction in all civil cases where the matter in controversy shall exceed in value $200, and not exceed $500, exclusive of interest; and concurrent jurisdiction with the district courts, when the matter in controversy shall exceed $500 and not exceed $1000, exclusive of interest; but shall not have jurisdiction of suits for the recovery of land."

2. "The county courts shall have the general jurisdiction of a probate court. They shall probate wills, appoint guardians of minors, idiots, lunatics, persons *non compos mentis*, and common drunkards, including the settlement, partition and distribution of estates of deceased persons, and to apprentice minors as provided by law."

3. "The county courts shall have original jurisdiction of all misdemeanors of which original jurisdicton is not given to the justices' court, as the same are now, or may be hereafter prescribed by law, and when fines to be imposed shall exceed $200."

The constitution (Sec. 8, Art. 5,) among other things, provides that, "district courts, shall have original jurisdiction * * * * * of all suits, complaints or pleas whatever, without regard to any distinction between law and equity, when the matter in controversy shall be valued at or amount to $500 exclusive of interest. * * * The district courts shall have appellate jurisdiction and general control in probate matters over the county court established in each county for appointing guardians, granting letters testamentary and of administration, for settling the accounts of executors, administrators, and guardians, and for the transaction of business appertaining to estates; and general control over executors, administrators, guardians and minors under such regulations as may be prescribed by the legislature."

In so far as the constitution gives to any of the courts an exclusive jurisdiction over any subject matter, it is not within the power of the legislature to give that jurisdiction to another tribunal in the absence of an express grant of such power to the legislature by the constitution. The only grant of power of this character is to be found in section 22, article 5, of the constitution, which provides that "the legislature shall have power, by local, or general law, to increase, diminish or change the civil and criminal jurisdiction of county courts; and in case of any such change of jurisdiction the legistature shall also conform the jurisdiction of the other courts to such change."

This power extends only to *civil* and *criminal* jurisdiction, and has no reference to probate jurisdiction.

In so far as the working of the civil and criminal jurisdiction conferred upon the county courts was concerned, we were entering upon, with us, a practically untrodden path; not so in regard to the probate jurisdiction conferred upon that court, for the constitution gave that to the tribunal which had long exercised it under statutes authorized by the constitution, which, in their language and intent, were almost, if not identical, with that now found in the constitution. Hence the power was given to the legislature so as to adjust the civil and criminal jurisdiction of the county courts, from time to time, as experience might indicate the necessity for so doing; that a tribunal could be found at all times so organized that the civil and criminal business of the country might be properly transacted, even if the

county courts were found to fail to accomplish the purposes
for which they were created.

No power was given by the constitution to the legislature
to enlarge or diminish the probate jurisdiction conferred
upon the county courts, nor to withdraw from the district
or county courts any jurisdiction essentially civil in its na-
ture, by conferring the same upon the probate branch of the
county court's jurisdiction.

The action now under consideration was treated and tried
both in the district and county courts as a proceeding in
probate, and under the provisions of the constitution, it
can receive no aid from articles 2695 and 2696, R. S.

That an action might have been maintained upon the
guardian's bond executed by Reed and his sureties in the
district court cannot be questioned. (Francis v. Northcote,
6 Tex., 183.)

Such an action would have been essentially a civil action,
in no manner partaking of the character of a proceeding in
probate, and the fact that the bond was executed as a secu-
rity for the due performance of the duties of the guardian
could not affect the character of the proceeding through
which it must be enforced in the courts.

The provisions of the constitution conferring probate ju-
risdiction upon the county courts, being in reference to the
matters now under consideration, no broader than were
they under the former law, and almost identical in lan-
guage, a consideration of cases adjudicated under the
former law, will show the construction put upon that law
by this court, and such construction the makers of the con-
stitution are presumed to have had in view at the time of
its adoption. (Munson v. Hallowell, 26 Tex., 475.)

In the case of Ingram v. Maynard (6 Tex., 131) the facts
were: That the administrator resigned, as he might then
do, on January 30, 1844, and on the 29th of August, 1848,
he voluntarily appeared before the probate court and ap-
plied for a final settlement of his account, which resulted in
a settlement on December 1, 1848, in which the probate
court entered a decree against him for $1021.69.

Upon that decree a suit was subsequently instituted in
the district court, and as a defence thereto a demurrer to the
petition, based upon the want of juirisdiction in the pro-

bate court to render the decree sued upon, was interposed. This was overruled, and this court, upon appeal, held :

1. That after the resignation of the administrator (although his account seems by his subsequent action to have been unsettled at that time), he sustained to the estate "no other relation than that of any other person between whom and the estate there were unsettled demands."

2. That the former fiduciary relation which had existed between the administrator and the estate, did not affect in any respect their then existing rights.

3. That if the administrator was indebted to the estate "it matters not how that indebtedness originated, the remedy of the estate was by a suit against him in a jurisdiction other than the county court."

"The relation of the defendant to the estate of his former intestate cannot be distinguished in principle from that of a mere creditor or debtor to the estate. The county court, therefore, had no jurisdiction to adjudicate the matters in controversy between him and the estate, or to render the judgment in question."

In the case of Francis v. Northcote, (6 Texas, 185), an administrator *de bonis non* brought an action in the probate court against a former administrator, asking a re-examination and restatement of his accounts. It did not appear in what manner the former administration had been terminated, but that it had terminated prior to the beginning of the action. There was a decree rendered against the former administrator, from which he appealed to the district court, which gave judgment in his favor upon his demurrer to the jurisdiction of the probate court, which that court had overruled. In passing upon the question, Wheeler, Justice, said : "But we are not aware of any provision which gives that court (the probate court) authority to call to account an administrator whose office has terminated. Being a court whose powers are defined and limited by express law, its authority is restricted to the enumerated subjects. It cannot transcend the powers conferred by the Constitution and laws enacted in pursuance of it. The adjudication of matters in controversy between the estate and the former administrator, whose office as such, has been finally determined, is not within the powers conferred. As respects the jurisdiction of the county court, the present cannot be dis-

tinguished in principle from the case of Maynard, administrator v. Ingram, decided at the present term."

After suggesting that the suit was brought in the county court, under the belief probably that it was necessary in that court to establish a *devastavit* by the administrator before a suit could be maintained upon the administrator's bond in the district court, the opinion proceeds: "This, however, it is conceived was not necessary; but the plaintiff might have sued in the district court upon the bond in the first instance, and upon proper averments and proof, the powers of that court are ample to afford the appropriate redress. * * * * If the plaintiff must have sued in the county court to establish the defendant's indebtedness, the adjudication of his rights might have been subjected to almost interminable delay. From the county court an appeal may be taken to the district court, where the trial is *de novo*, and the whole subject might be again contested there. If successful in that court, the plaintiff may be further delayed by an appeal to the supreme court. If the judgment be there affirmed, he must then resort to another suit in the district court before he can enforce his demand. * * * * * * * The powers of the district court are better adapted to the investigation and just decision of controversies like the present, than those of the county court. And the section of the Constitution we have quoted, has conferred a jurisdiction commensurate with that object."

The opinion concludes: "We are of the opinion that the suit was improperly brought in the county court; that the court did not err in its judgment dismissing the case."

These decisions practically assert that after the termination of an administration, however that termination may occur, the probate court has no power to render a decree against one who formerly held the fiduciary relation of administrator or executor, and the relation of a guardian in no way differs from that of an administrator or executor in reference to the jurisdictional question involved.

The case at bar goes further, and seeks to maintain in the probate court, against sureties upon the guardian's bond an action upon that bond, after nearly four years have passed, from the time their principal ceased to be guardian, and nearly seven years after the guardian had ceased to perform any act as guardian, except the preservation of property in

consequence of an application for him to give a new bond, which had been made by one of his sureties.

Mrs. Timmins was married on the 26th of September, 1876, and from that time forward Reed ceased to be either the guardian of her person or estate, as fully as t iough upon final settlement he had been discharged, had be•n removed for cause, or had died. (P. D., 6928, Act August, 15, General Laws, p. 178.)

This relation to Mrs. Timmins after her marriage, in reference to the estate which had formerly been in his hands, was that of debtor and creditor, and to enforce any right which she might have against him or his sureties, the sum claimed amounting to more than $1000, a suit should have been brought against the principal and sureties upon the guardian's bond in the district court for the proper county.

Such an action would have been one at law, in which the defendants would have had the right to have all contested questions of facts tried by a jury; of this right they were deprived in the county court and in the district court by the course pursued.

Should a creditor of a ward's estate attempt to maintain such a suit in the probate court no one would assert the existence of jurisdiction in that court to maintain such a suit. Wherein the present differs from such a suit it is difficult to see. They stand upon the same ground, at least in so far as sureties are concerned, for as against them in either case it is essentially a suit upon the bond, for their obligation arises from no other source, and the relationship between the parties in each case would be that of debtor and creditor.

The constitution has not conferred jurisdiction upon the probate courts over many matters affecting estates of decedents and wards, instances of which may be found exemplified in the following cases, in addition to those already noticed: (Booth v. Todd, 8 Texas, 137; Martel v. Martel, 17 Texas, 396; Wardsworth v. Chick, 55 Texas, 243.

We hold that the constitution does not confer upon the county courts, sitting in probate, the power to render a decree under the facts of this case; that the district court alone had jurisdiction over the matter, and that the legislature has no power to confer upon the county courts, as courts of probate, any jurisdiction not conferred upon them by the constitution.

The views expressed render it unnecessary to consider many of the questions presented by the assignments of error and briefs of counsel, and the only remaining question is as the disposition now to be made of the case.

It has been settled by a line of decisions in this State that if the court *a quo* had no jurisdiction of a case, that the appellate court can have none. (Baker v. Chisholm, 3 Texas, 157; Able v. Bloomfield, 6 Texas, 263; Horan v. Wahrenberger, 9 Texas, 317; Davis v. Stewart, 4 Texas, 223.)

In the last case named it was said; "There was then no error in dismissing the appellant's petition for want of jurisdiction. This ground being well taken, it could not be gotten over by an appeal to the district court, because if the court *a quo* has no jurisdiction an appeal can not be entertained, although the court to which the appeal has been taken may have original jurisdiction of the question."

The judgment now in question was rendered by the district court upon appeal from the county court. To the same effect is the case of Neil v. The State, 43 Texas, 92; and the practice has been in such cases brought to this court to reverse the judgment if one other than a dismissal has been rendered, and to dismiss the case. (Neil v. The State, 43 Texas, 92; Wardsworth v. Chick, 55 Texas, 243; Roeser v. Bellmer, 7 Texas, 1.) And such must be the action in this case. The judgment is reversed and the cause is dismissed.