J. J. EASTERLINE ET AL. V. B. F. BEAN.

No. 5467. Decided April 21, 1932.
(49 S. W., 2d Series, 427.)

328

*Adams & Hamilton,* of Jasepr, *R. C. Musselwhite* and *J. J. Collins,* of Lufkin, *Ben H. Powell* and *J. A. Rauhut,* of Austin, for plaintiffs in error.

The first contention of the plaintiffs in error is that a guardianship proceeding must be immediately closed upon the death of the ward and the guardian discharged and that the power or jurisdiction of the probate court in the guardianship proceeding immediately terminated, except to settle the accounts of the guardian and enter his discharge. Alford v. Halbert, 74 Texas, 346; Templeton v. Ferguson, 89 Texas, 47; Withers v. Patterson, 27 Texas, 497.

One claiming title by virtue of a guardian's deed executed after the death of the ward, the deed under such circumstances being an absolute nullity and conveying no title whatsoever, it can be collaterally attacked in a proceeding brought by the lawful heirs of the ward against the person claiming under the void deed, to recover the title and possession of the land involved in such void deed. Vernon's Annotated Texas Statutes (1925), arts. 4128, 4296; Estate of Livermore, 132 California, 99, 64 Pac., 113, 84 Am. St. Rep., 37; Crawford v. Halbert, 74 Texas, 346, 12 S. W., 72; Fortson v. Alford, 62 Texas, 576; Young v. Gray, 60 Texas, 543; Timmons v. Bonner, 58 Texas, 554; Marlow v. Lacy, 68 Texas, 154, 2 S. W., 52; Schouler on Domestic Relations, p. 424; Martin v. Caldwell et al., 49 Ind. App., 1, 96 N. E., 660; Whittemore v. Coleman et al., 239 Ill., 450, 88 N. E., 228; 28 Corpus Juris, sec. 113; Cornelison v. Million, 138 Ky., 416, 128 S. W., 316; Barrett v. Provincher, 39 Neb., 773, 58 N. W., 298; State Fair Assn. v. Terry, 74 Ark., 149, 85 S. W., 87; Price v. Peterson, 38 Ark., 494.

*J. B. Forse*, of Newton, *Smith & Lanier*, of Jasper, and *John B. Warren*, of Houston, for defendant in error.

The county court of Jasper county, in probate matters, is a court of general jurisdiction, and its judgments and orders have absolute verity in a collateral proceeding.

The County Court of Jasper County, sitting in matters of probate being a court of competent and general jurisdiction over the persons and the estates of persons of unsound minds, its orders and judgments in relation thereto can be impeached only by the record thereof, and not by evidence dehors the record.

The County Court of Jasper County having ordered the sale of the land by the guardian, and the latter having sold it and made due report thereof before the claimed death of the ward, the court had the power to complete what it had lawfully done, as the confirmation of the sale relates back to the date of the sale and carried title from that date. McClelland v. Moore, 48 Texas, 355; Mills v. Alexander, 21 Texas, 154; Flores v. Maverick (Civ. App.), 26 S. W., 316; Taylor v. Snow, 47 Texas, 462; Cain v. Woodward, 74 Texas, 549, 19 S. W., 319; Martin v. Burns, 80 Texas, 678.

MR. JUDGE SHARP of the Commission of Appeals delivered the opinion for the court.

For a statement of the nature and result of the case we adopt the following from the opinion of the Court of Civil Appeals:

"This was a trespass to try title suit by appellants, two of the heirs of Benjamin F. Easterline, against appellee, Dr. B. F. Bean, to recover 364 2/3 acres of land, a part of the Owens Taylor survey in Jasper county. Upon an instructed verdict judgment was entered in appellee's favor. On the 29th of January, 1909, Easterline was adjudged insane. On the 15th of the following February, Minerva Ann Bayles was appointed guardian of his person and estate by the probate court of Jasper county. On the 20th day of that month she duly qualified as such guardian. On the 9th of the following March, as guardian, she made application to the probate court of Jasper county to sell the land in controversy. The application to sell was duly granted and sale ordered on the 15th of March, as prayed for in the application. On the 17th of March, as guardian, she made report of sale to the probate court, showing that she had sold at private sale, as ordered by the court, the land in controversy, to appellee, Dr. B. F. Bean. On the 23d of March the probate court entered its order duly confirming the sale as reported. On the 25th of March, the guardian executed her deed as directed by the order of confirmation, conveying the land in controversy to Dr. Bean. Without quoting from these various orders, we say of them that they are in all things regular, and on their face recite full compliance with the statutory regulations for the sale of the ward's real estate by his guardian.

"On the trial appellant attacked the guardian's sale of the land by offering evidence to the effect that the ward died on the 20th of March, prior to confirmation of the order of sale on the 23d of March. Appellee offered evidence to the effect that Easterline died on the 28th of March, subsequent to the order of confirmation and the execution and delivery to him of the deed in question. The verdict was instructed in appellee's favor on the trial court's conclusion that the guardian's deed and the orders supporting it were not subject to collateral attack. Though appellee pleaded the several statutes of limitation, and in support of the instructed verdict insists before us that the evidence as a matter of law supported these pleas, a review of this evidence is not necessary, since in our judgment the trial court's theory is the law of the case."

An appeal was made by plaintiffs in error to the Court of Civil Appeals for the Ninth Judicial District at Beaumont, and that court held that the evidence offered to the effect that the ward died on the 20th of March prior to confirmation of the

order of sale on the 23d day of March was inadmissible and affirmed the judgment of the trial court.  15 S. W. (2d) 734.

Plaintiffs in error applied for a writ of error to the Supreme Court which was granted.

The sole question for decision in this case is:  Can the heirs of the deceased ward, Benjamin F. Easterline, attack a sale of the ward's land under the orders of the Probate Court of Jasper County n a guardianship proceeding by showing that the order of confirmation of the sale was made after the ward's death?

■ A brief review of the policy of this State upon this and kindred questions will be helpful in reaching a correct answer to the foregoing question.  It has long been the public policy of this State, as expressed through legislative acts, that no administration shall ever be had upon a living person's estate. Article 3292, R. S., 1925, in part, reads:  "The probate of a will, or administration of an estate of a living person shall be void; * * *"

The courts of this State, in an unbroken line of decisions, have held that a grant of administration on the estate of a living person is void.  It may be proved in a collateral proceeding that the person whose estate is attempted to be administered is not dead and that the probate court had no jurisdiction thereof and any act done is totally void.  Fisk v. Norvel, 9 Texas, 13; Withers v. Patterson, 27 Texas, 491; Templeton v. Ferguson, 89 Texas, 47.

■ Furthermore, t has long been the public policy of this State that when a ward dies, the probate court loses jurisdiction of the guardianship matter, save and except that the guardianship shall be immediately settled and closed and the guardian discharged as provided for by law.  Articles 4128 and 4296, R. S.; Timmins v. Bonner & Long, 58 Texas, 554; Fortson v. Alford, 62 Texas, 576; Alford v. Halbert, 74 Texas, 346; Young v. Gray, 60 Texas, 543; Marlow v. Lacy, 68 Texas, 154, 2 S. W., 52; see also Estate of Livermore, 132 Cal., 99, 64 Pac., 113; Martin v. Caldwell, 49 Ind. App., 1, 96 N. E., 660; State Fair Assn v. Terry, 74 Ark., 149, 85 S. W., 87; Price v. Peterson, 38 Ark., 494; Whitmore v. Coleman, 239 Ill., 450, 88 N. E., 228; Rodgers on Domestic Relations, sec. 942; 28 C. J., 1096.

Article 4128, in part, reads as follows:

"The Guardian of a minor continues in office, unless duly discharged according to law, *until the minor dies* or becomes

twenty-one years of age, or being a female, marries. * * *"
(Italics ours).

Article 4296 reads:

*"When the ward dies, or if a minor, arrives at the age of twenty-one years, or if a female, marries, or, if a person of unsound mind or habitual drunkard, is restored and discharged from guardianship, the guardianship shall be immediately settled and closed and the guardian discharged,* as provided in this chapter." (Italics ours).

The decisions construing these articles of the statutes are uniform and have never been challenged by the decisions of our Supreme Court. We will review some of the cases bearing upon this question.

In the case of Timmins v. Bonner & Long, 58 Texas, 554, Judge Stayton says:

"Mrs. Timmins was married on September 26, 1876, and from that time forward Reed ceased to be either the guardian of her person or estate as fully as though upon final settlement he had been discharged, had been removed from cause, or had died. Pasch. Dig., 6929; Acts of August, 1876, General Laws, p. 178."

In the case of Fortson v. Alvord, 62 Texas, 576, it is said:

"Our statute provides that 'the guardian of a minor continues in office, unless sooner discharged according to law, until the minor arrives at the age of twenty-one years, or, being a female, marries, or until such minor shall die.' R. S., art. 2512.

"The statute also provides for the settlement of the guardianship in case of the death of the ward. Title 47, chap. 18, R. S.

"Mr. Schoular in his work on Domestic Relations, page 424, says: 'Death of the ward necessarily terminates the guardianship. And after the ward's death the guardian's only duty is to settle up his accounts and pay the balance in his hands to the ward's personal representatives, whereupon his trust is completely fulfilled.' "

The case of Fortson v. Alford was again appealed to the Supreme Court. It was contended in that case that the Anderson County Court after the death of the ward still had control of her estate for the purpose of settlement with the guardian. Again, it was said:

"* * * There is no authority under our law in a guardianship proceeding giving the Probate Court jurisdiction to order a sale of land to pay debts after the death of the ward. 'Death of the ward necessarily terminates the guardianship.' "

In the case of Young v. Gray, supra, the Supreme Court, in passing upon probate proceedings, after the death of the ward, held:

"* * * The proper conclusion in such cases, under the statute, seem to be that, when the ward dies, the duties of the guardian are at an end, except, alone, for the purpose of paying claims theretofore approved, or making his final account, and obtaining as soon as he can, for his protection in the future, an order of final settlement and discharge. Timmons v. Bonner, 58 Texas, 554. The estate of the deceased ward should, like the estate of any other deceased person, be turned over as soon as possible, by the guardian, to the administrator or such other person or persons as by law may be determined to be entitled to it."

In 28 Corpus Juris, at page 1096, the rule is stated in the following language:

"The death of the ward necessarily terminates the guardianship, and thereupon all power and duties of the guardian cease, except the duty, which remains, to make a proper accounting and settlement in the probate court."

In the case of State Fair Association v. Terry, supra, the Supreme Court of Arkansas, in an opinion involving a similar question, says:

"* * * Terry, as a guardian of a deceased person, represented no one. The guardianship terminated upon the death of Joseph Townsend, and Terry's sole duty, as such guardian, then consisted in making proper settlement of his trust in the probate court. Price v. Peterson, 38 Ark., 494; Rodgers on Domestic Relations, sec. 942."

In the case of Estate of Livermore, supra, the Supreme Court of California, in passing upon a similar question, held as follows:

"This appeal is taken from an order allowing a guardian to sell real estate which formerly belonged to the ward. Prior to the application for the order the ward had died, being at the time over the age of majority. After her death, the guardian filed her accounts, and upon the settlement thereof it was found and decreed by the court that the estate of the ward was indebted to her in a considerable sum of money. Thereupon this application for a sale of the real estate of the late ward was made by the guardian, and ordered granted by the court."

"* * * The proceedings here taken for the sale were had under the code provisions pertaining to guardianship matters, and as to a sale of real estate, those proceedings only contem-

plate a case where there is a living ward,—a living ward not only when the proceedings are inaugurated, but up to and including the moment the deed is made. When the guardian executes a deed, he executes it for and in the place and stead of his ward, and the moment that ward is dead, his power to execute the deed is gone. He has no more power to execute a deed under these circumstances than would an attorney in fact after the death of his principal."

In the case of Martin v. Caldwell, supra, the appellate court of Indiana, in construing a statute with reference to guardianship proceedings, held as follows:

"In the absence of authority to settle the estate of his deceased ward under Section 3070, Burns' 1908, said guardianship was ended by the death of his ward, and his only duty then remaining was to fully account for and turn over to the proper person the estate of the said ward remaining in his hands. Stumph v. Pleiffer, 58 Ind., 472; Masters v. Jones, 158 Ind., 647, 64 N. E., 213."

It is contended (1) that the judgment entered by the probate court in this case is regular upon its face and its verity should not be questioned; (2) that a judgment rendered subsequent to the death of the party duly cited is valid until set aside; and (3) that the decisions of this State preclude an inquiry by evidence aliunde the record, in a collateral attack upon a judgment of a domestic court of general jurisdiction, regular on its face, into any fact which the court rendering such judgment must have passed upon in proceeding to its rendition. The following cases are cited: Murchison v. White, 54 Texas, 78; Martin v. Robinson, 67 Texas, 368; Crawford v. McDonald, 88 Texas, 626; Templeton v. Ferguson, 89 Texas, 47.

■ The decisions hold that a void judgment is one entirely null within itself and which is not susceptible of ratification or confirmation and its nullity cannot be waived. Such is the judgment of a court having no jurisdiction over the subject matter adjudicated. A voidable judgment is one rendered by a court having jurisdiction but which is irregularly and erroneously rendered. Such a judgment is valid until vacated by direct proceeding instituted for that purpose or until reversed on appeal or by writ of error; it becomes valid by failure within the proper time to have it annulled or by subsequent ratification or confirmation.

■ We recognize fully the importance of the rules which give absolute verity to a judgment entered in a court of competent

jurisdiction and is regular upon its face, and that a judgment entered subsequent to the death of a party duly cited is valid until set aside. These rules rest upon sound legal principles and, when applicable, are upheld by the decisions of this State. It is settled beyond controversy that our probate courts are courts of general jurisdiction in matters pertaining to estates of decedents.

In testing the contentions made, we cannot overlook the important fact that the rule announced by the Legislature in the enactment of articles 4128 and 4296, and which have been uniformly construed by the courts of this State, is firmly established as the public policy of this State. That policy declared that when a ward dies the probate court loses jurisdiction of the guardianship matter, save and except the guardianship shall be immediately settled and the guardianship discharged as provided by law. The death of the ward stopped the proceedings authorizing the further sale of land belonging to the ward, and such judgment entered after the death of the ward was the judgment of the court having no jurisdiction over the subject matter adjudicated. Nor do we think the decisions cited in support of the contentions made by defendant in error in any manner overrule the decisions cited above construing articles 4128 and 4296. A close study of the questions involved in each of the cases cited will clearly show that the question involved here was not involved in those cases; and that the court in rendering the opinions did not even discuss or refer to articles 4128 and 4296 or the decisions of the court construing them. Certainly, it would be safe to assume that if the Supreme Court intended to construe articles 4128 and 4296 differently from the construction given them by the Supreme Court in the cases cited, the court would have mentioned the articles and the opinions construing them and expressly overruled them. This was not done. On the contrary, Judge Denman, in rendering the opinion in the case of Templeton v. Ferguson, supra, one of the leading cases cited, stated the question involved in that case as follows:

"The first assignment is to the effect that the court erred in not holding that the Probate Court of Harrisburg County had no jurisdiction of the estate of Murphy, and that the entire administration proceedings were for that reason void, in that Murphy was not at the time of his death an inhabitant or resident of said county, did not die therein, and did not at the time administration was granted, nor at any time prior thereto, have any property therein."

The court in that case, in effect, held that the question of the validity of judicial proceedings for want of jurisdiction may arise in—(1) Cases over which a court under the very law of its creation has not possible power, i. e., administration upon the estate of a living person, etc. In such case the law raises no presumption in their support. (2) Cases over which the law has conferred upon the court general judicial power but its right to exercise it in a particular case is challenged upon the ground that no such state of facts existed or that no such preliminary steps have been taken as would authorize the court to exercise its powers in the given case. In our judgment, the opinion of the Supreme Court in that case sustains our views here and we quote from that opinion as follows:

"Thus, there are classes of cases over which a court has not, under the very law of its creation, any possible power: e. g., an administration upon the estate of a living person, administration upon the estate of a deceased soldier when prohibited by statute, and administration in bankruptcy upon the estate of a person deceased before the institution of the proceedings, a suit for divorce in a foreign country in which neither of the parties is domiciled, or a suit to recover against a non-resident upon service by publication a purely personal judgment. In such cases the entire proceedings are coram non judice, the law raises no presumptions in their support, and the facts bringing any particular case within one of such classes may be established by evidence dehors the record, either in a direct or collateral attack, for the purpose of destroying the apparent binding force of such proceedings. This is upon the principle that the court, being as a matter of law without power to investigate or determine any question connected with such matters, can not, by a clear usurpation of power, preclude inquiry into the facts establishing such usurpation and the consequent nullity of its proceedings. In such cases the court is without jurisdiction of the subject matter, the status of the parties, or the person of the defendant, as the case may be, and other courts have no difficulty or hesitation in ignoring its proceedings or decrees."

■ Articles 4128 and 4296 are old statutes and have been a part ·of the statutory law of this State for many years. They have been brought forward in the codification of the statutes since 1879 up to the present time. They have been construed many times by the courts of this State, which constructtion became a part of the statutory law. Many times since these articles were enacted and construed by the courts, the statutes have

been codified without change and unquestionably it has become an established rule in this State. The Legislature in the exercise of its constitutional rights enacted the foregoing articles as the public policy of this State. With the wisdom of that act we have no concern. The Legislature had the power to enact them. This rule has been too long established in this State to be overturned, unless for imperative reasons, and if it is to be changed or abrogated, it is a matter for the consideration of the Legislature.

■ This record shows that Minerva Ann Bayles was appointed guardian of the estate of Benjamin Easterline and as principal executed a bond therefor and B. F. Bean, the defendant in error, signed the bond as one of the sureties. This bond was dated February 20, 1909. It also appears that B. F. Bean acted as one of the appraisers to appraise the estate of Benjamin Easterline. It further appears that attached to the application made by Minerva Ann Bayles, guardian of the estate of Benjamin Easterline for the sale of the land involved in this suit, is shown a statement of the condition of the estate and two items, one for $68 to Dr. B. F. Bean, and one for $2.50 to him as an appraiser, appear therein. He also testified that he was a practicing physician and treated Benjamin Easterline at the time of his death. Certainly, in this state of the record, he is not in a position to be classed as a complete stranger to the probate proceedings with respect to the sale of the land in controversy.

In view of the foregoing articles of the statutes and the decisions cited, it follows that when the ward dies, the jurisdiction of the probate court in guardianship proceedings ends, in so far as making sales of the estate of the deceased ward are concerned and "the guardianship shall be immediately settled and closed and the guardian discharged." If the ward died on the 20th day of March prior to confirmation of the order of sale entered on the 23rd day of March, the Probate Court of Jasper County lost jurisdiction of the guardianship proceedings involved, and, therefore, had no power to confirm the sale of the land. The testimony offered, to the effect that the ward died on the 20th day of March prior to confirmation of the order of sale on the 23rd day of March, was admissible in evidence, either in a direct or collateral attack upon the judgment entered, and the trial court erred in excluding same and the Court of Civil Appeals erred in affirming the judgment.

The judgments of the trial court and the Court of Civil Appeals will be reversed and this cause remanded to the district

court for another trial in accordance with this opinion.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. CURETON, Chief Justice.