Jeffrey D. COOK, Appellant

v.

Barbara J. COOK, Appellee.

No. 2–06–057–CV.

Court of Appeals of Texas,
Fort Worth.

Dec. 13, 2007.

Mary D. McKnight, Law Office of Mary D. McKnight, P.C., Dallas, TX, for Appellant.

McCurley Orsinger, McCurley Nelson & Downing, L.L.P., Brad M. Lamorgese, Laurence A. Deplaza P.C., Laurence A.

Deplaza and Sheila O'Connor, Dallas, TX, for Appellee.

Panel B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

In fourteen issues, Appellant Jeffrey Cook appeals from the trial court's "Agreed Decree of Divorce." Jeffrey mainly complains that the trial court entered the decree despite his prior revocation of his consent to the agreement. Because we hold that Jeffrey withdrew his consent to the agreement before the trial court granted the divorce and rendered judgment, we reverse the trial court's judgment as void and remand this case for a new trial.

■ In his thirteenth issue, Jeffrey challenges findings of fact number thirty-one and number thirty-two, set out below:

31. The Court rendered judgment on the property division and the issues concerning the Suit Affecting the Parent–Child relationship on July 29, 200[5].

32. The agreement of the parties was unrevoked at the time of rendition of judgment.

Jeffrey contends that he revoked his consent prior to rendition of the judgment, basing his argument on the fact that on July 29, 2005, after approving the settlement agreement, the visiting trial judge stated, "[u]pon submission of the final decree and signed by the Court, the divorce will be granted at that time, not today."

Section 7.006(a) of the family code provides,

To promote amicable settlement of disputes in a suit for divorce or annulment, the spouses may enter into a written agreement concerning the division of the property and the liabilities of the spouses and maintenance of either spouse. The agreement may be revised or repudiated before *rendition of the divorce* or annulment unless the agreement is binding under another rule of law.[1]

The record shows that the divorce was expressly not rendered on July 29, 2005. Instead, under the particular facts of this case, the only evidence shows that the trial court granted the divorce when the visiting trial judge signed the decree on December 2, 2005. Jeffrey filed his "Objection to the Entry of Judgment and Motion for a New Trial," contending that "agreement[s] as to many of the[ ] issues [in the proposed agreed judgment] were not negotiated with [him, and many] of the 'stipulations' on record took place without [his] participation ...," on November 8, 2005. Consequently, we agree with Jeffrey that he repudiated the agreement (that is, revoked his consent) prior to the time of rendition.

■ The fact that the trial court approved the settlement agreement on July 29, 2005 does not transform such approval into a rendition of judgment. As the Texas Supreme Court has held,

[A]pproval of a settlement does not necessarily constitute rendition of judgment. Judgment is rendered when the trial court officially announces its decision in open court or by written memorandum filed with the clerk. .... The judge's intention to render judgment in the future cannot be a present rendition of judgment. The rendition of judgment is a present act, either by spoken word or signed memorandum, which decides the issues upon which the ruling is made.[2]

---

1. TEX. FAM.CODE ANN. § 7.006(a) (Vernon 2006) (emphasis added).

2. *S & A Restaurant Corp. v. Leal,* 892 S.W.2d 855, 857–58 (Tex.1995) (citations omitted).

In the case before us, "[t]he language of the trial judge during the oral pronouncement indicates [a present] intent to approve the divorce settlement, but not a clear intent to render a full, final, and complete judgment."[3] Delaying the granting of the divorce evidenced an intent not to render a full, final, and complete judgment on July 29, 2005. Consequently, rendition did not occur until December 2, 2005, when the visiting judge signed the decree granting the divorce.[4]

Appellee Barbara A. Cook argues that Jeffrey never revoked his consent to the agreement because his complaints were vague and voiced too late. We held above that Jeffrey's complaints were timely under the statute, and our review of his "Objection to the Entry of Judgment and Motion for a New Trial" shows that he challenges the entire agreement, except his designation as joint managing conservator, based on voluntariness (contending that "agreements as to many of the[ ] issues [in the proposed agreed judgment] were not negotiated with [him, and many] of the 'stipulations' on record took place without [his] participation"). Accordingly, we hold that his complaints were not so vague that the trial court was not sufficiently apprised of them.

Having held that Jeffrey revoked his consent before the divorce was rendered and therefore before judgment was rendered, we sustain Jeffrey's thirteenth is-

sue. We do not reach his remaining issues.[5]

Barbara argues that we should not reverse and remand this case for a new trial because she would be entitled to enforce the rule 11 agreement as a contract anyway; therefore, she argues, there could be no harm in denying all of Jeffrey's issues. Alternatively, Barbara argues that we could modify the judgment and affirm it as modified. A judgment rendered after one of the parties revokes his consent is void.[6] The "Agreed Decree of Divorce" in this case is therefore void. Barbara points to no authority, nor do we know of any, that would allow us to affirm a void judgment as modified.

The fact that the judgment is void

> does not preclude the [trial] court, after proper notice and hearing, from enforcing a settlement agreement complying with Rule 11 even though one side no longer consents to the settlement. The judgment in the latter case is not an agreed judgment, but rather is a judgment enforcing a binding contract.
>
> . . . .
>
> An action to enforce a settlement agreement, where consent is withdrawn, must be based on proper pleading and proof.[7]

---

3.  *James v. Hubbard,* 21 S.W.3d 558, 561 (Tex. App.-San Antonio 2000, no pet.) (citing *Leal,* 892 S.W.2d at 857); *see also Tri v. J.T.T.,* 162 S.W.3d 552, 561 (Tex.2005) ("A trial court's judgment is the *final* indication of what relief it granted or denied with regard to specific causes of action.") (emphasis added); *Woods v. Woods,* 167 S.W.3d 932, 934 (Tex.App.-Amarillo 2005, no pet.) ("As can be seen, the italicized passages contain words short of evincing a clear intent to *finally adjudicate* (at the time the words were uttered) the rights involved.") (emphasis added).

4.  *See Leal,* 892 S.W.2d at 858 ("The fact that the trial court believed that he had rendered judgment during the ... hearing is not dispositive.").

5.  *See* Tex.R.App. P. 47.1.

6.  *Leal,* 892 S.W.2d at 857.

7.  *Padilla v. LaFrance,* 907 S.W.2d 454, 461–62 (Tex.1995); *see also Woods,* 167 S.W.3d at 933 n. 2 (stating same).

The Supreme Court pointed out in *Padilla* that

> Padilla [had] filed a counterclaim seeking enforcement of the parties' agreement, and both sides moved for summary judgment on that claim. . . . [T]he summary judgment evidence established an enforceable settlement agreement as a matter of law. The trial court therefore should have granted Padilla's motion for summary judgment and enforced the agreement.[8]

Our review of the record before us, however, does not show that Barbara sought enforcement of the agreement as a contract through pleadings and proof. We can therefore not determine at this time that enforcing a void judgment against Jeffrey would be harmless.[9]

Accordingly, we reverse and remand this case for a new trial, without prejudice to the parties' rights to seek or avoid the enforcement of the agreement as a contract.[10]

LIVINGSTON, J., filed a dissenting opinion.

TERRIE LIVINGSTON, Justice, dissenting.

I respectfully dissent from the majority opinion in this case. While I agree there is some evidence to support the majority's conclusion that Mr. Cook attempted to revoke his consent, I believe that it was too late and that the trial court's judgment should be affirmed.

Here, the parties to the divorce were in the midst of a contested trial proceeding that had been going on for two days when they reached a settlement. Both parties were represented by counsel, who broke for a recess and came back on the record and dictated their agreement terms into the record before the trial court. The trial court accepted their agreements as to property, custody, and visitation; confirmed the parties' desire to enter into the agreements; and cautioned them that they would not be able to modify or change the terms of their agreements. All of this took place on July 29, 2005. Mrs. Cook's attorney was directed to prepare the decree and present it to Mr. Cook's attorney for approval. Apparently, there were post-judgment difficulties in getting the written decree approved and signed. On or about November 8, 2005, Mr. Cook filed an Objection to the Entry of Judgment and Motion for a New Trial complaining that the proposed decree contained terms that he had not agreed to and that he did not consent to the proposed decree. A visiting trial judge signed the Decree of Divorce on December 2, 2005, despite Mr. Cook's objection.

On appeal, Mr. Cook contends, and the majority agrees, that his objection is sufficient to revoke his consent to the settlement agreement. He contends that section 7.006 of the family code requires a conclusion that he rescinded his consent before "rendition of the divorce." Section 7.006(a) provides that an agreement incident to divorce may be "revised or repudiated before rendition of the divorce or annulment unless the agreement is binding under another rule of law." TEX. FAM.CODE

---

8. *Padilla*, 907 S.W.2d at 462.

9. *See Custom Corporates, Inc. v. Sec. Storage, Inc.*, 207 S.W.3d 835, 841 (Tex.App.-Houston [14th Dist.] 2006, original proceeding) ("Because the order is void, it cannot be enforced against appellants."); *see also Easterline v. Bean*, 121 Tex. 327, 49 S.W.2d 427, 429 (Tex.

1932) ("[A] void judgment is one entirely null within itself, and which is not susceptible of ratification or confirmation, and its nullity cannot be waived.").

10. *See Padilla*, 907 S.W.2d at 462.

Ann. § 7.006(a) (Vernon 2006). We must, therefore, determine what constitutes "rendition" under this provision of the Texas Family Code in light of these circumstances.

"A judgment routinely goes through three stages: (1) rendition, (2) signing, and (3) entry." *Wittau v. Storie*, 145 S.W.3d 732, 735 (Tex.App.-Fort Worth 2004, no pet.) (internal citations omitted). "A judgment is rendered when the trial court officially announces its decision—either in open court or by written memorandum filed with the clerk—on the matter submitted for adjudication." *Id.* at 735. And obviously, a judgment is "signed" when a judge actually signs a written order or decree; it is "entered" when the clerk performs the task of entering it in the minutes of the court. *Oak Creek Homes, Inc. v. Jones*, 758 S.W.2d 288, 290 (Tex. App.-Waco 1988, no writ). The question becomes, when did this trial court "render" its decision on the division of property, custody, and visitation and when did it "render" its decree on the divorce. To make this determination, we must look more closely at what transpired when the parties proved up their agreement.

During trial and after a recess, counsel for both parties represented to the trial court that they had entered into a settlement agreement "as to all issues pending before the Court." They then proceeded to go through the division of their personal belongings and assets. Then, they moved on to their stipulations regarding custody and visitation of their child. When they concluded, the trial court asked the parties directly:

THE COURT: Now, both parties have been in court and heard this recitation of both parties. Is this your agreement?

MS. COOK: Yes.

THE COURT: And are you asking the Court to approve it?

MS. COOK: Yes.

THE COURT: Is there any question that you have, at all, about it?

MS. COOK: No, sir.

THE COURT: Anything you want to add that hasn't been added today?

MS. COOK: No, sir, I don't believe so.

THE COURT: Mr. Cook, you've heard the agreement the parties have placed on record here. Is this your agreement?

MR. COOK: Yes, sir.

THE COURT: Are you asking the Court to approve it?

MR. COOK: Yes, sir.

THE COURT: Anything you wish to say to the Court?

MR. COOK: No, sir.

THE COURT: It's the only time you're going to get a chance to do so.

MR. COOK: (shakes head)

THE COURT: Would you prepare the order or Mr. Bienfang?

MR. DEPLAZA: I'll prepare the order, Your Honor.

THE COURT: And submit it to him?

MR. DEPLAZA: Yes, of course. And I imagine at some point, probably, at least my client and I will come for the final prove-up.

THE COURT: All right. I don't understand what you're getting at there.

MR. DEPLAZA: Oh, just to submit the order. Then I have to put one more thing on the record, Your Honor.

THE COURT: The case has been proven up when it's been agreed.

MR. BIENFANG: You proved up the—

MR. DEPLAZA: There's one other thing that we didn't do. We didn't do

the no domestic violence, and I think that's required.

THE COURT: It is.

MR. DEPLAZA: So if I may.

THE COURT: Do it now.

MR. DEPLAZA: Is it your testimony that there has been no domestic violence perpetrated between the two of you during the course of the two years preceding this trial today?

MS. COOK: Yes.

MR. DEPLAZA: Nothing further.

MR. BIENFANG: No questions.

MR. DEPLAZA: Thank you.

THE COURT: Based upon the agreements of the parties, the Court will find that it is a fair, just, and right division of the parties on the property. Based upon the agreement of the parties, the Court finds it in the best interest of this minor child. And the agreement the parties have reached regarding the conservatorship and visitation is approved believing that to be in the best interest of the child. Anything further?

MR. DEPLAZA: Nothing further, Your Honor.

THE COURT: Anything further?

MR. BIENFANG: No, Your Honor.

THE COURT: Upon submission of the final decree and signed by the Court, the divorce will be granted at that time, not today. Thank you very much.

Mr. Deplaza, with regard to the exhibits, each party will retain their own exhibits for any future use necessary.

Section 7.006(b) of the family code provides that upon presentation of a "written agreement concerning the division of property and the liabilities of the spouses," the trial court must determine whether the agreement is "just and right." TEX. FAM. CODE ANN. § 7.006(b). Once the court determines the terms are just and right,

"those terms are binding on the court." *Id.* It is clear on this record that the court approved the settlement agreement as to both property, custody, and visitation. In other words, the court "rendered" its decision that day on those matters. Once the court "renders" its decision, it is too late to revoke or rescind one's agreement.

Conversely, appellant and the majority believe that subsection "a" of section 7.006 allows appellant to "revise" or "repudiate" the written agreement before "rendition of the divorce" even though the trial court had already determined their dictated agreement to be "just and right." Appellant places heavy emphasis on the court's statement that the divorce itself would not be granted until it actually signed the decree. Appellant contends that he still had time to "repudiate" the dictated and approved agreement. *Id.* § 7.006(a). The majority and appellant believe that the court's statement that it was not actually granting the entire divorce that day means that there was still time to revise and repudiate under section 7.006(a) because "rendition of the divorce" had not yet occurred, citing *S & A Restaurant Corp. v. Leal,* 892 S.W.2d 855, 857 (Tex.1995).

There is a distinction to be drawn between this case and the *Leal* case; in *Leal,* the trial court *only* approved the settlement stating he "will approve" the settlement. *Id.* at 857. Here, the trial court not only approved the settlement but found it to be "just and right" as required by the family code. Therefore, I believe that "rendition" occurred once the trial court approved their agreement. "In the case of an oral rendition, the judgment is effective immediately. . . ." *Wittau,* 145 S.W.3d at 735. The act of "rendition of the divorce" is tied specifically and only to the actual ministerial duty of signing a final decree that the court directed Mrs. Cook's attorney to prepare. *See id.* "The rendition of judgment is a present act,

either by spoken word or signed memorandum, which decides the issues upon which the ruling is made." *Keim v. Anderson,* 943 S.W.2d 938, 942 (Tex.App.-El Paso 1997, no writ). In other words, as to the trial of the division of assets and liabilities, along with conservatorship and support, the case was over. There was nothing else to be done other than the "signing and entry" of the actual final decree. "Once a judgment is rendered by oral pronouncement, the entry of a written judgment is purely a ministerial act." *In re Marriage of Joyner,* 196 S.W.3d 883, 886 (Tex.App.-Texarkana 2006, pet. denied) (citing *Keim,* 943 S.W.2d at 942).

Furthermore, there is a distinction between a section 7.006 *written* agreement being presented to a court and the act of the parties dictating an oral agreement into the record in front of the trial judge: the former fits particularly into the confines of a section 7.006 written agreement incident to divorce. But a verbal settlement agreement dictated on the record in open court is not what the family code contemplated under section 7.006; section 7.006 contemplates a written agreement. It makes sense that there would be a "waiting period" or some time within which to revise or revoke a written agreement because the parties are not contemporaneously physically present in court to indicate their acquiescence to their agreement as they are when their agreement is dictated on the record in open court. By dictating the terms of their settlement on the record in open court, by asking the trial court to approve the settlement, and by virtue of the trial court's approval of the settlement's terms as "just and right," this section 7.006 agreement really becomes, by definition, a rule 11 agreement as well. *See* TEX. FAM.CODE ANN. § 7.006; TEX.R. CIV. P. 11. Rule 11 provides, "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or *unless it be made in open court and entered of record.*" TEX.R. CIV. P. 11 (emphasis added). Thus, once the parties entered into a rule 11 agreement, their settlement agreement became enforceable as a rule 11 agreement. *Woods v. Woods,* 167 S.W.3d 932, 935 n. 2 (Tex.App.-Amarillo 2005, no pet.) Once they had a binding settlement agreement, approved by the court and also enforceable under rule 11, it was too late for appellant to revoke his consent. *See Alcantar v. Okla. Nat'l Bank,* 47 S.W.3d 815, 821 (Tex.App.-Fort Worth 2001, no pet.).

Once the trial court approves the settlement agreement in open court and finds it to be "just and right" as required by section 7.006, and so states on the record that that is what has occurred, it has "rendered" its judgment on that portion of the divorce. Because the parties were before the court, there is no need to give them an opportunity to revoke their consent as there might be when the agreement is in writing and presumably made outside court. Under rule 11, a stipulation in open court is binding and conclusive on the parties and the court when entered. *See id.*

Furthermore, I also believe appellee asked the court to enforce the parties' agreement. And although appellee did not ask the trial court to enforce the agreement specifically as a rule 11 agreement, the pleadings seeking enforcement of the agreement stipulated and agreed to in open court are sufficient to me. *See* TEX.R. CIV. P. 11; *see also Padilla v. LaFrance,* 907 S.W.2d 454, 461 (Tex.1995).

For all these reasons, I respectfully dissent to the majority opinion and would affirm the trial court's order.