

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00005-CV

**IN THE MATTER OF THE GUARDIANSHIP OF** Martha Jane **VALDEZ**,
an Incapacitated Person

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2007-PC-2303
Honorable Tom Rickhoff, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  February 26, 2014

AFFIRMED

This appeal arises from a guardianship proceeding. Jerry Valdez appeals the probate court's order authorizing U.S. Specialty Insurance Company to interplead the net proceeds[1] from a supersedeas bond into the registry of the court. Valdez contends the probate court lacked jurisdiction to enter the order. Valdez also contends the trial court erred in awarding attorney's fees to U.S. Specialty and in denying his motion for sanctions and motion for new trial. We affirm the probate court's order.

---

[1] The net proceeds were $7,425.27, which was the face amount of the supersedeas bond, $9,585.27, less a $2,160 deduction for U.S. Specialty's reasonable attorney's fees

## BACKGROUND

Dorothy Mello was appointed as the permanent guardian of Martha Jane Valdez's person and estate in the underlying guardianship proceeding. *See In re Guardianship of Valdez*, No. 04-08-00886-CV, 2009 WL 2045207, at *1 (Tex. App.—San Antonio July 15, 2009, pet. denied) (mem. op.). Jerry Valdez, who was Martha Jane's son, filed a trespass to try title claim against Martha Jane and Mello, claiming title to certain real property. *Id.* Mello, as guardian, filed a counterclaim seeking title to the property and also filed a claim against Valdez and his wife for conversion of Martha Jane's bank accounts. *Id.* A jury found that Martha Jane lacked the mental capacity to execute the four deeds to Valdez under which he claimed title and that Valdez and his wife had converted funds from Martha Jane's bank accounts. *Id.* at *4. On September 5, 2008, the trial court signed a judgment awarding Mello, as guardian, title to the real property and $8,474.54 in damages for the conversion claim. *See id.* at *1. On September 30, 2008, Martha Jane died.

On December 8, 2008, Valdez filed a timely notice of appeal of the probate court's judgment against him, and this court issued an opinion affirming the judgment on July 15, 2009. *See id.* On August 12, 2009, Valdez filed the supersedeas bond involved in this appeal.[2] The bond acknowledged Valdez's obligation as principal and U.S. Specialty's obligation as surety to pay Mello the sum of $9,585.27, in the event Valdez's appeal was unsuccessful. This court's mandate affirming the probate court's judgment issued on January 6, 2010.

On September 8, 2010, Valdez's attorney sent a letter to U.S. Specialty, noting that the judgment was final and that mandate had issued. The letter concluded, "Collection of the judgment is between you and DOROTHY H. MELLO, Guardian of MARTHA JANE VALDEZ, and the

---

[2] The record is unclear regarding the reason the supersedeas bond was posted after this court's opinion had issued.

County Clerk of Bexar County, Texas, under the laws applicable to supersedeas bonds." On October 31, 2011, Valdez's attorney sent a second letter stating that he had been retained by Valdez to compel U.S. Specialty to abide by the terms of the supersedeas bond. On May 11, 2012, Valdez's attorney sent a third letter stating "my client is entitled to bring suit against you" and suit would be filed unless U.S. Specialty did the following: (1) issued a check to Mello as guardian or deposited the amount of the supersedeas bond with the county clerk; (2) issued a check to Valdez in the amount of $3,500; and (3) issued a check to Valdez's attorney in the amount of $2,500.

On June 28, 2012, U.S. Specialty's attorney sent a letter to Mello, acknowledging that she was the bond obligee on the supersedeas bond. The letter stated that the attorney's efforts to contact Mello by telephone were unsuccessful. The letter also stated that Valdez had requested payment of the bond proceeds; however, Mello was the proper recipient of the bond proceeds. The letter requested that Mello contact U.S. Specialty's attorney "so that we may discuss the requirements necessary to process a bond claim." The letter further stated that if Mello or her legal counsel did not respond within ten days, U.S. Specialty's attorney "may have to petition the Court to pay the bond proceeds into the Court's registry for distribution on further Court order."

On August 29, 2012, U.S. Specialty filed a motion to interplead the funds into the registry of the court. The probate court held a hearing on the motion on October 3, 2012. Neither Valdez nor his attorney appeared at the hearing. One of the exhibits introduced at the hearing was a letter from U.S. Specialty's bond claims attorney to Valdez's attorney stating that U.S. Specialty was ready, willing, and able to pay Mello, who was the appropriate beneficiary on the bond, and explaining the process and documents required for Mello to make her claim for the bond proceeds. U.S. Specialty's attorney stated, "My understanding that that was — the requirements or the prerequisites for the collection on the bond by Ms. Mello were never carried out." On October 4,

2012, the probate court signed the order authorizing U.S. Specialty to deposit the bond funds into the court's registry, less its reasonable attorney's fees.

## JURISDICTION

Valdez initially contends that the probate court lacked jurisdiction to enter the order because Martha Jane died more than four years before the order was signed. In support of this contention, Valdez primarily relies on cases discussing jurisdiction over guardianship estates based on statutes that have since been amended. *See, e.g., Easterline v. Bean*, 49 S.W.2d 427, 428 (Tex. 1932) (discussing Article 4296 which provided that when the ward dies, "the guardianship shall be immediately settled and closed"); *In re Estate of Glass*, 961 S.W.2d 461, 462 (Tex. App.— Houston [1st Dist.] 1997, pet. denied) (noting "Under the current statutory scheme, 'a guardianship of the estate of a ward is settled and closed when … an incapacitated ward dies.' TEX. PROB. CODE ANN. § 745(a)(2) (West Supp. 1997)."); *Gutierrez v. Estate of Gutierrez*, 786 S.W.2d 112, 113 (Tex. App.—San Antonio 1990, no writ) (noting "TEX. PROB. CODE ANN. § 404 (West Supp. 1990) provides: (a) Administration of the … guardianship of the persons and estates of wards shall be settled and closed …. (3) when an incompetent ward dies….").

The cases cited by Valdez predate an amendment to section 745 of the Texas Probate Code to provide that "[a] guardianship of the estate of a ward shall be settled when … an incapacitated ward dies." TEX. PROB. CODE ANN. § 745(a)(2) (West Supp. 2013).[3] Under section 752 of the Texas Probate Code, an order declaring the guardianship estate closed could be entered by the probate court when a ward died only after: (1) the guardian filed a final settlement; (2) citation had been served on all persons interested in the estate; (3) the probate court had examined and approved

---

[3] Because the probate court signed the order in the underlying cause prior to the repeal and recodification of the Texas Probate Code as the Texas Estates Code, we cite the provisions of the Texas Probate Code in effect when the probate court's order was signed.

the final settlement; (4) the probate court had ordered that any part of the estate remaining in the hands of the guardian be delivered to the personal representative of the deceased ward's estate if one has been appointed, or to any other person legally entitled to the estate; and (5) "the guardian of the estate ha[d] fully administered the estate in accordance with" Chapter XIII of the Texas Probate Code.[4] *Id*. at § 752, *see also id*. at §§ 749, 751. The Texas Supreme Court recognized the effect of these amendments in *Zipp v. Wuemling*, 218 S.W.3d 71, 74 (Tex. 2007), stating, "It is axiomatic that with the death of the ward, the guardianship of the person must end. But the estate must still be settled." (internal citations omitted). In this case, the guardianship of Martha Jane's estate had not been settled or closed; accordingly, the probate court retained jurisdiction over the guardianship proceeding and had jurisdiction to enter the order being appealed. *See* TEX. PROB. CODE ANN. § 750 (West 2003), now codified at TEX. ESTATES CODE ANN. § 1204.201 (West 2014) (providing alternative procedure for closing guardianship).

## ATTORNEY'S FEES

Valdez next contends that the probate court erred in allowing U.S. Specialty to deduct its attorney's fees from the supersedeas bond proceeds. Valdez contends that U.S. Specialty did not plead any statutory or contractual basis for such an award. The Texas Supreme Court, however, has stated, "The Texas Rule is that the innocent stakeholder in an interpleader is entitled to attorney's fees, to be paid out of the impleaded fund." *U.S. v. Ray Thomas Gravel Co.*, 380 S.W.2d 576, 581 (Tex. 1964); *see also State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 803 (Tex. 2007) (referencing same rule); *Heggy v. American Trading Employee Retirement Account Plan*, 123 S.W.3d 770, 780 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (same).

---

[4] Similar language regarding the closing of the guardianship was re-codified as section 1204.152 of the Texas Estates Code. TEX. ESTATES CODE ANN. § 1204.152 (West 2014).

**SANCTIONS**

In his third issue, Valdez contends the probate court "should have heard and granted [his] motion for sanctions." We reject this contention for three reasons.

First, the record reflects that U.S. Specialty's attorney appeared at the hearing on Valdez's motion for sanctions and announced not ready based on lack of sufficient notice. The record further reflects that the probate court found the notice to U.S. Specialty was insufficient. In his brief, Valdez does not challenge this finding. Because Valdez did not set a hearing on his motion with sufficient notice to U.S. Specialty, the probate court did not err in refusing to hear his motion.

Second, because Valdez failed to set a hearing on his motion with sufficient notice to U.S. Specialty, Valdez did not obtain a ruling on his motion for sanctions. Accordingly, he failed to preserve this issue for our review. TEX. R. APP. P. 33.1; *Cortez v. Mann Bracken, LLP*, No. 03-09-00615-CV, 2011 WL 4424293, at *5 (Tex. App.—Austin Sept. 22, 2011, no pet.) (mem. op.); *Moak v. County of Cherokee*, No. 12-01-00322-CV, 2003 WL 21196190, at *3 (Tex. App.—Tyler May 21, 2003, pet. denied) (mem. op.).

Finally, Valdez requested sanctions claiming that U.S. Specialty's attorney "made a false statement when he said that there were competing claims on the funds secured by the supersedeas bond." Contrary to Valdez's claim, however, the probate court found that U.S. Specialty "is or may be subject to multiple liability with respect to [the bond] funds." Valdez does not challenge the sufficiency of the evidence to support this finding.

**MOTION FOR NEW TRIAL**

In his final issue, Valdez contends the probate court erred in denying his motion for new trial. Although Valdez lists four grounds in his brief on which he believed he was entitled to a new trial, Valdez does not cite any cases or other authority to support any of these grounds, and fails to make a clear and concise argument to support the asserted grounds. Accordingly, Valdez

has waived any complaint as to this issue.  *See In re Estate of Valdez*, 406 S.W.3d 228, 235 (Tex. App.—San Antonio 2013, pet. denied).

## CONCLUSION

The probate court's order is affirmed.[5]

Catherine Stone, Chief Justice

---

[5] The request for appellate sanctions in Valdez's reply brief is denied.